Filed 10/16/18; Certified for Publication 11/14/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ROBERT GENISMAN, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> HOPKINS CARLEY et al., <br><br> Defendants and Respondents. | H042543 <br> (Santa Clara County <br> Super. Ct. No. 1-13-CV-258405) |

In this legal malpractice action, appellant Robert Genisman alleges his former attorneys, Hopkins Carley and Mark Heyl (collectively respondents), were negligent in their representation of him in connection with the 2005 sale of his ownership interest in two private companies (the Transaction). Genisman alleges the Transaction initially was structured as a buyout and respondents restructured it as a redemption without properly advising him regarding that change. As a result, Genisman alleges, he was sued for failing to properly disclose the nature of the Transaction to others. The trial court granted summary judgment to respondents on statute of limitations grounds. We affirm.

## I.    BACKGROUND

In 2005, Genisman and Pete Cline co-owned ECI Corporation and Coast Capital Mortgage Co., Inc. (Coast Capital). Genisman wanted Cline to buy out his interest in the companies. In connection with the buyout, Genisman sought to be released from the personal guarantees he had made to lenders, including Stanley Blumenfeld. Genisman retained the law firm of Hopkins Carley to represent him in the Transaction. Initial drafts

of the Transaction documents structured it as a buyout.  At some point, respondents revised the documents such that the Transaction was a redemption of Genisman's interest by the companies.[1]  Genisman was unaware of the change.  When he signed the Transaction documents, he believed they required Cline to buy him out when in fact they called for his shares to be redeemed.

Genisman and Blumenfeld were longtime friends and business associates.  On March 1, 2012, Blumenfeld threatened to sue Genisman for lying "about Pete Cline buying his interest in ECI Corporation and Coast Capital when in fact Genisman was taking money out of ECI Corporation instead."  That evening, Genisman e-mailed Heyl to request copies of the Transaction documents and to advise Heyl that Blumenfeld might sue him.  Genisman wrote that Blumenfeld "now indicates that if he had known (and that I should have told him) that I was selling to ECI and not to Cline, he never would have let me off the hook on the guarantee for his loan to ECI because ECI, using the funds to buy me out, depleted their resources and threfore [*sic*] left him with less assets under the guarantee."

Blumenfeld sued Genisman on July 13, 2012.  Blumenfeld's first amended complaint, filed on September 11, 2012, asserted claims against Genisman for intentional misrepresentation, negligent misrepresentation, and constructive fraud, among others. The complaint alleged that Blumenfeld had loaned $3.5 million to Coast Capital, secured by the assets of Coast Capital and by the personal guarantees of Genisman and Cline. Blumenfeld further alleged that he released Genisman from his personal guarantees in December 2005 and, at approximately the same time, requested repayment of his loans by Coast Capital.  Coast Capital repaid a portion of the loans, but $750,000 remained

---

[1] In the context of securities, the term "redemption" refers to "the reacquisition of a security by the issuer," and may "refer to the repurchase of stock and mutual-fund shares."  (Black's Law Dict. (10th ed. 2014) p. 1468, col. 1.)  In his deposition, Heyl explained that in a redemption "the shares of the stock of a shareholder are absorbed" or "repurchase[d]" by the corporation.

unpaid when, in 2009, Coast Capital became insolvent. In January 2012, Blumenfeld learned that the Transaction documents called for Coast Capital to pay Genisman $1,115,000. Blumenfeld alleged that he would not have agreed to release Genisman from his personal guarantees had Genisman properly advised him of the terms of the Transaction.

Genisman hired a law firm to defend him against the Blumenfeld lawsuit in October 2012. That firm billed Genisman $2,475.40 for work performed between October 17, 2012 and December 20, 2012.

Genisman filed this legal malpractice action against respondents on December 31, 2013. He alleged that his former attorneys changed the structure of the Transaction from a buyout to a redemption "without specifically addressing the issue with" him, advising him "of the potential repercussions of structuring the [T]ransaction as a redemption," advising him to "disclose that change to any and all parties that may be [a]ffected by such change," or "determin[ing] whether or not the agreement could be legally structured as a redemption." Genisman further alleged that those negligent omissions caused him to be sued and to incur damages in the form of "amounts paid . . . to defend [himself] from such lawsuits."

Respondents moved for summary judgment on the ground that the action was untimely under Code of Civil Procedure section 340.6, subdivision (a)[2], which requires legal malpractice claims be brought one year after actual or constructive discovery. The trial court granted the motion and entered judgment in favor of respondents. Genisman timely appealed.

---

[2] All further statutory citations are to the Code of Civil Procedure unless otherwise indicated.

## II.  DISCUSSION

### A.  *Standard of Review*

"A defendant moving for summary judgment has the burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action." (*Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 945.)  The expiration of the applicable statute of limitations is one such complete defense.  (*Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1037; *Rose v. Fife* (1989) 207 Cal.App.3d 760, 770.)  A defendant moving for summary judgment based on the affirmative defense of the statute of limitations carries its burden by presenting evidence establishing that the plaintiff's claim is time barred.  (*Police Retirement System of St. Louis v. Page* (2018) 22 Cal.App.5th 336, 340 (*Police Retirement System*).)  "It then falls to plaintiff[] to counter with evidence creating a dispute about a fact relevant to that defense." (*Ibid.*)  That is, plaintiff must submit evidence that would allow a "reasonable trier of fact [to] find in plaintiff['s] favor on the statute of limitations issue." (*Ibid.*; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 ["There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof"].)  "If defendant[] presented evidence establishing the defense and plaintiff[] did not effectively dispute any of the relevant facts, summary judgment was properly granted.  (Code Civ. Proc., § 437c, subd. (p)(2).)" (*Police Retirement System*, *supra*, at p. 340.)

In reviewing an order granting summary judgment, we review the entire record de novo in the light most favorable to the nonmoving party to determine whether the moving and opposing papers show a triable issue of material fact.  (*Addy v. Bliss & Glennon* (1996) 44 Cal.App.4th 205, 214.)

4

### B. Summary Judgment was Proper

Section 340.6, subdivision (a) sets forth the statute of limitations for legal malpractice actions. (*Shaoxing City Maolong Wuzhong Down Products*, *Ltd*. *v*. *Keehn & Associates*, *APC* (2015) 238 Cal.App.4th 1031, 1035.) It provides that such a claim is timely if "commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." (§ 340.6, subd. (a).) Both the one-year and four-year limitations periods are tolled, however, until the plaintiff sustains "actual injury." (§ 340.6, subd. (a)(1); *Jocer Enterprises*, *Inc*. *v*. *Price* (2010) 183 Cal.App.4th 559, 567.) The four-year limitations period also is tolled while "[t]he attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney . . . ." (§ 340.6, subd. (a)(3) ["this subdivision shall toll only the four-year limitation"].) "Thus, the limitations period is one year from actual or imputed discovery, or four years (whichever is sooner), unless tolling applies." (*Beal Bank*, *SSB v*. *Arter & Hadden*, *LLP* (2007) 42 Cal.4th 503, 508.)

Below, respondents relied on, and the trial court ruled based on, the one-year limitations period. On appeal, the parties primarily dispute when Genisman had inquiry notice of the facts giving rise to the alleged malpractice and when he suffered actual injury, for purposes of triggering the one-year limitations period. Genisman also argues that the willful concealment tolling provision applies. And respondents argue for the first time on appeal that Genisman's claim is barred by section 340.6, subdivision (a)'s four-year limitation period.

#### 1. Genisman Was on Inquiry Notice by October 2012

Summary judgment was proper under section 340.6, subdivision (a)'s one-year limitations period only if the undisputed facts compel the conclusion that Genisman was on inquiry notice of his claim more than one year before the complaint was filed. Inquiry

5

notice exist where "the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807.) " 'A plaintiff need not be aware of the specific "facts" necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.' [Citation.]" (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 685 (*Peregrine Funding*).)

On March 1, 2012, Genisman knew Blumenfeld was accusing him of selling his interest in Coast Capital "to ECI and not to Cline," thereby depleting ECI's resources. And Genisman knew Blumenfeld—a longtime friend and business associate—might sue based on that accusation. Genisman took the threat seriously enough to notify his attorney, Heyl, and to request copies of the Transaction documents. Blumenfeld did sue several months later, alleging that Coast Capital had paid Genisman $1,115,000 in connection with the Transaction. Genisman engaged counsel to handle that lawsuit in October 2012. The March 2012 conversation with Blumenfeld and Blumenfeld's subsequent lawsuit would have prompted a reasonable person to inquire into the structure of the Transaction. Such inquiry would have led Genisman to discover the true nature of the Transaction, which is the basis for his claim against respondents.

Genisman says he "had no reason to believe that anything Mr. Blum[en]feld said was true . . . ." But " '[s]ubjective suspicion is not required. If a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation.' [Citation.]" (*Wilshire Westwood Associates v. Atlantic Richfield Co.* (1993) 20 Cal.App.4th 732, 740.) Any reasonably prudent person,

upon being informed that he or she was being sued for failing to disclose the structure of a transaction, would conduct further investigation into the matter.

Genisman also argues that he could not reasonably have discovered the malpractice until respondents provided his counsel with the Transaction documents in March 2013. While receipt and review of the Transaction documents may have been required for Genisman to discover " 'the specific "facts" necessary to establish [his malpractice] claim,' " inquiry notice requires only " 'a suspicion of wrongdoing . . . .' " (*Peregrine Funding*, *supra*, 133 Cal.App.4th at p. 685.)

Genisman's reliance on *Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189 is misplaced. Not only was that case decided at the demurrer stage, but there the plaintiffs were unaware of the law firm's "involvement, and thus its malpractice, until . . . less than one year prior to the filing of the" complaint. (*Id.* at p. 224.) Here, Genisman always was aware of respondents' involvement in the Transaction. And, more than a year before he filed suit, Blumenfeld's lawsuit put him on notice that the Transaction may not have been structured as he believed.

In sum, "no reasonable trier of fact could conclude [from the undisputed facts] that as of [October 2012 Genisman] did not have enough information to at least make [him] suspicious that" respondents had not properly advised him about the Transaction's structure. (*Police Retirement System*, *supra*, 22 Cal.App.5th at p. 342.)

>    2.    *Genisman Suffered Actual Injury More Than a Year Before Suing*

While Genisman was on inquiry notice of his claim more than a year before he filed suit, the grant of summary judgment to respondents on statute of limitations grounds was proper only if he also sustained actual injury more than a year before suing. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 757 (*Jordache*) ["a plaintiff who actually or constructively discovered the attorney's error, but who has suffered no damage to support a legal malpractice cause of action, need not file suit prematurely"].) For purposes of section 340.6, "actual injury occurs when the

7

plaintiff sustains any loss or injury legally cognizable as damages in a legal malpractice action based on the acts or omissions that the plaintiff alleged." (*Jordache*, *supra*, at p. 762.) While "nominal damages will not end the tolling of section 340.6's limitations period," it is "the fact of damage, rather than the amount, [that] is the critical factor." (*Id*. at p. 752.) "When the material facts are undisputed, the trial court can resolve the question [of when the plaintiff sustained actual injury under section 340.6] as a matter of law according to the principles governing summary judgment." (*Id*. at p. 764.)

The undisputed facts establish that, between October 17, 2012 and December 20, 2012, Genisman incurred and paid more than $2,000 in attorney fees defending against the Blumenfeld action.[3] Those fees are among the damages Genisman seeks in this malpractice action. The undisputed facts thus compel the conclusion that Genisman sustained actual injury more than a year before he filed suit on December 31, 2013. (*Truong v. Glasser* (2009) 181 Cal.App.4th 102, 114 ["Plaintiffs first sustained actual injury when they were required to obtain and pay new counsel to file a lawsuit seeking to escape the consequences of their signing the lease and Lease Addendum, which were among the actual damages Plaintiffs suffered as a result of Glasser's alleged malpractice"].)

Genisman's argument that these fees are akin to "nominal damages" is unavailing. "Nominal damages are properly awarded in two circumstances: (1) Where there is no loss or injury to be compensated but where the law still recognizes a technical invasion of a plaintiff's rights or a breach of a defendant's duty; and (2) although there have been,

---

[3] Genisman's brief states that he "paid litigation counsel less than $2,000 in attorneys' fees" through December of 2012. But the billing statements to which he cites, and the parties' separate statements of undisputed facts, establish that he was billed $159 on October 24, 2012; $1,743.45 on November 21, 2012; and $572.95 on December 21, 2012 for a total of $2,475.40. The same documents show he paid the $159 October bill and a $10,000 retainer, which was applied to pay the November and December bills. In any event, whether Genisman paid $1,900, or $2,000, or $2,475.40 in attorney fees is not dispositive. As discussed below, none of these amounts is nominal.

real, actual injury and damages suffered by a plaintiff, the extent of plaintiff's injury and damages cannot be determined from the evidence presented." (*Avina v. Spurlock* (1972) 28 Cal.App.3d 1086, 1088.) Neither circumstance is present here. As of December 20, 2012, more than a year before this suit was commenced, Genisman had suffered a provable, compensable loss of $2,475.40. We also are unpersuaded by Genisman's contention that there exists a disputed issue of material fact as to when he sustained actual injury. The dispute Genisman identifies is whether, "when billing started in October of 2012," he knew of anything "connecting the Blumenfeld claims to the legal services provided by Defendants." That asserted dispute relates to the issue of inquiry notice and has no bearing on the actual injury analysis.

### 3. *Willful Concealment Does Not Toll The One-Year Limitations Period*

Finally, Genisman contends there is a disputed issue of material fact as to whether respondents willfully concealed the facts underlying his malpractice claim. The tolling provision concerning an attorney's willful concealment of facts tolls "only the four-year limitation," which we need not address given our conclusion that the trial court correctly granted summary judgment to respondents based on the one-year limitation.[4] (§ 340.6, subd. (a)(3).)

## III. DISPOSITION

The judgment is affirmed. Respondents shall be awarded costs on appeal.

---

[4] We likewise need not reach respondents' alternative argument that we may affirm on the ground that they did not breach the standard of care.

_____

ELIA, ACTING P. J.

WE CONCUR:


_____

BAMATTRE-MANOUKIAN, J.



_____

MIHARA, J.




*Genisman v. Hopkins Carley et al.*
H042543

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ROBERT GENISMAN, | H042543<br>(Santa Clara County<br>Super. Ct. No. 1-13-CV-258405) |
| Plaintiff and Appellant, | |
| v. | |
| HOPKINS CARLEY et al., | **ORDER GRANTING REQUEST FOR PUBLICATION** |
| Defendants and Respondents. | |

THE COURT:

Pursuant to California Rules of Court, rule 8.1105(b), the request for publication is hereby granted. It is ordered that the opinion in this matter, filed on October 16, 2018, shall be certified for publication.

_____
ELIA, ACTING P. J.

_____
BAMATTRE-MANOUKIAN, J.

_____
MIHARA, J.

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No.: 1-13-CV-258405 |
| Trial Judge: | Honorable Beth McGowen |
| Counsel for Plaintiff and Appellant:<br>ROBERT GENISMAN | Charles Steven Bronitsky<br>Law Offices of Charles S. Bronitsky |
| Counsel for Defendants and Respondents:<br>HOPKINS CARLEY et al., | Ellyn E. Nesbit<br>Bruce D. Macleod<br>Bradley A. Bening<br>Willoughby, Stuart, Bening & Cook |

*Genisman v. Hopkins Carley et al.*
H042543