Filed 11/06/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HILLARIE LEVY et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>ONLY CREMATIONS FOR PETS, INC.,<br><br>    Defendant and Respondent. | G057888<br><br>(Super. Ct. No. 30-2018-01016953)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Craig L. Griffin, Judge.  Reversed and remanded.

The Law Office of John Derrick and John Derrick for Plaintiffs and Appellants.

Horvitz & Levy, H. Thomas Watson, Aaron Henson; Luna & Glushon and Sean M. Bryn for Defendant and Respondent.

\*          \*          \*

Plaintiffs Hillarie and Keith Levy appeal from a judgment of dismissal following the sustaining of a demurrer without leave to amend. Plaintiffs sued defendant, Only Cremations for Pets, Inc., alleging it agreed to cremate individually two of their dogs, but then intentionally sent them random ashes instead. They sought recovery of emotional distress damages under contract and tort law.

Presently, the complaint fails to state a cause of action under any contract theory. There are no factual allegations showing the existence of any contract between plaintiffs and defendant. It was plaintiffs' veterinarian, not plaintiffs, who contracted with defendant. However, we will remand to give plaintiffs an opportunity to plead more fully a third-party beneficiary cause of action.

On the other hand, the complaint adequately pleads two tort theories: trespass to chattel and negligence. The allegations here fit comfortably in a cause of action for trespass to chattel claim, which permits recovery of emotional distress damages. The allegations also support a negligence cause of action because defendant advertised its services as providing emotional solace, and thus it was foreseeable that a failure to use reasonable care with the ashes would result in emotional distress. Accordingly, we reverse and remand.

ALLEGATIONS

Plaintiffs owned two dogs, Wesley and Winnie. Plaintiffs obtained Wesley in 2005 for their daughter, who died of cancer at the age of 29. Plaintiffs adopted Winnie from a shelter the following year. Wesley and Winnie were cherished members of the family.

Winnie died of heart failure in September 2016. At the time of Winnie's death, she weighed 25.6 pounds. On the same day, Hillarie took Winnie's remains to their veterinarian, Park Animal Hospital, to arrange for cremation.

2

Hillarie was given two options for cremating Winnie: (1) a private cremation, in which Winnie would be cremated separately from other pets and only her ashes would be returned to plaintiffs in a special urn of their choice; or (2) a group cremation, in which Winnie would be cremated with other pets and the ashes would be scattered at sea. The group cremation was a cheaper option than the private cremation. Hillarie chose the private cremation for Winnie and paid the veterinarian for the private cremation.

The veterinarian contracted with defendant for Winnie's private cremation. Defendant, through its Web site, held itself out as a provider of animal cremation services that engaged in private and group cremation services. In its marketing materials, defendant professes to "believe our pets are as much a part of the family as any human, deserving the same equal, loving treatment." Its website describes one of its goals as "to provide [customers] with a dignified and proper farewell to [their] beloved pet."

Approximately 10 to 15 days after leaving Winnie's remains at the veterinarian for cremation, Hillarie picked up a sealed box containing Winnie's cremated ashes from the veterinarian's office. The box of ashes came with a certificate of guarantee from defendant, stating, "We certify that this pet has been cremated privately by [defendant]." Affixed to the box was a heart-shaped tag with Winnie's name on it.

About a year after Winnie's death, Wesley was euthanized at Park Animal Hospital due to a lung disease. At the time of Wesley's death, he weighed 12.5 pounds, less than half the size of Winnie. On the same day, Hillarie again contracted with the veterinarian to have Wesley cremated in a private cremation and paid the veterinarian for the service. Again, Wesley's remains were sent to defendant to be cremated privately. Upon receiving a similar box containing Wesley's ashes, Hillarie noticed it was much heavier than the box containing Winnie's ashes. After comparing the weights of the two boxes, Hillarie returned to the veterinarian's office to express concern that Wesley's box contained a different animal's ashes. The employees at the veterinarian's office weighed Wesley and Winnie's ashes and found out Winnie's ashes, despite having been the larger

3

dog, weighed 6.5 ounces, while Wesley's weighed 8 ounces. In addition to the weight disparity, neither dog's ashes weighed what they should, which is approximately 3 percent of the dog's weight before being cremated.

After the investigation of the weights of Winnie and Wesley's ashes, the veterinarian's office agreed "there was an issue" and refunded plaintiffs the costs of both cremation services. That same day, Hillarie called defendant and spoke with Dr. George Katcherian, the owner. Hillarie told him the ashes of her dogs were mixed up. Katcherian told Hillarie he would look into the issue. Four days later, Katcherian told Hillarie that her dogs were privately cremated. Katcherian offered to send Hillarie two of his finest urns, but Hillarie declined. Katcherian then offered to invite Hillarie to make an appointment to observe the private cremation process the next time her pet is cremated, which he claimed is worth $450. Hillarie declined. After that, Katcherian sent two dozen white roses to plaintiffs' house.

Plaintiffs were devastated at not having received their pets' ashes. It was their wish to bury Wesley's ashes next to their deceased daughter, as Wesley was their daughter's beloved pet. Plaintiffs planned to bury Winnie's ashes at their vacation home, which was Winnie's favorite place.

PROCEDURAL HISTORY

Plaintiffs filed the underlying complaint against defendant, asserting causes of action for (1) trespass to chattel, (2) breach of contract, (3) negligence, (4) negligent infliction of emotional distress, (5) deceptive trade practices, (6) breach of bailment, and (7) breach of duty of good faith and fair dealing. On appeal, plaintiffs concede the fourth cause of action for negligent infliction of emotional distress is encompassed by the third cause of action for negligence. Also, plaintiffs abandon their fifth cause of action for deceptive trade practices.

Soon after plaintiffs filed the first amended complaint, defendant demurred to all causes of action. Before the hearing on the demurrer, the court issued a tentative ruling sustaining defendant's demurrer without leave to amend. The court reasoned that plaintiffs' "right to the ashes has not been interfered with," and that, in any event, plaintiffs had no recoverable damages. The tentative ruling concluded by saying "Unless at the hearing on the demurrer plaintiffs can articulate any theory upon which defendant can be held liable, the Court will sustain the demurrer without leave to amend." Plaintiffs did not appear at the hearing. The tentative ruling became the final ruling and the demurrer was sustained without leave to amend. Plaintiffs timely appealed from the subsequent judgment of dismissal.

## DISCUSSION

*Contract Claims*

Plaintiffs contend all three contract claims (breach of contract, breach of the duty of good faith and fair dealing, and breach of bailment) should survive because the complaint adequately pleaded a factual basis for a contractual relationship between plaintiffs and defendant. Specifically, plaintiffs argue there was an implied contract between plaintiffs and defendant, or, alternatively, that they have standing to bring contract claims against defendant as third party beneficiaries of the express contract between defendant and the veterinarian. We review the court's order de novo and conclude the court correctly found the complaint does not presently state a cause of action under a contract theory, but we remand to give plaintiffs an opportunity to amend to plead third party beneficiary status, if possible.

A. *Implied-in-fact Contract*

As an initial matter, plaintiffs admit there was no express contract between plaintiffs and defendant. Plaintiffs contracted with the veterinarian; the veterinarian contracted with defendant. Instead, plaintiffs argue there was an *implied* contract between plaintiffs and defendant because defendant publicly held itself out to be a provider of private and group cremation services, and plaintiffs accepted its offer by requesting a private cremation service and paying for it. We are unpersuaded.

"[T]he vital elements of a cause of action based on contract are mutual assent (usually accomplished through the medium of an offer and acceptance) and consideration. As to the basic elements, there is no difference between an express and implied contract. While an express contract is defined as one, the terms of which are stated in words [citation], an implied contract is an agreement, the existence and terms of which are manifested by *conduct* [citation]." (*Division of Labor Law Enforcement v. Transpacific Transportation Co.* (1977) 69 Cal.App.3d 268, 275, italics added.) Mutual assent "'is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.'" (*DeLeon v. Verizon Wireless, LLC* (2012) 207 Cal.App.4th 800, 813.)

It is axiomatic that an "acceptor must have knowledge of the offer . . . ." (1 Witkin, Summary of Cal. Law (11th ed. 2020) Contracts, § 181(a).) Thus, to establish an implied-in-fact contract, plaintiff must have been aware of some conduct by defendant which could have been understood to be an offer to perform a private cremation service. Yet the complaint does not allege plaintiffs were aware of *any* conduct by defendant which implied an offer to perform a private cremation. Nor do they allege they were aware of defendant's Web site, which described how a private cremation would be conducted. Since plaintiffs were not aware of any conduct by defendant, from which the

6

terms of a contract for private cremation could be implied, plaintiffs could not have accepted an offer to do so.

### B. *Third Party Beneficiary*

Plaintiffs' more plausible theory is that they have standing to bring contract causes of action as third party beneficiaries. Civil Code section 1559 states, "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." In *Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817 (*Goonewardene*) our high court set forth three prerequisites to apply this doctrine: (1) the third party would in fact benefit from the contract; (2) a motivating purpose of the contracting parties was to provide a benefit to the third party; and (3) permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. (*Id*. at p. 830.) As to the second element, "the contracting parties must have a motivating purpose to benefit the third party, and not simply knowledge that a benefit to the third party may follow from the contract." (*Ibid*.) As to the third element, it "calls for a judgment regarding the potential effect that permitting third party enforcement would have on the parties' contracting goals, rather than a determination whether the parties actually anticipated third party enforcement at the time the contract was entered into." (*Id.* at p. 831.)

The overarching structure of the cremation transaction here is common: A company contracts to provide a service to a customer but then employs a subcontractor to perform the service. Perhaps the most common example of this arrangement is found in the construction industry, wherein a property owner will enter into a contract with a construction company (a "general contractor") to construct a building on the property, and the general contractor will then enter into a series of subcontracts with purveyors of the various construction trades, such as framers, drywall installers, electricians, plumbers,

etc. In the ordinary course of things, the subcontractor will charge a certain amount to the general contractor, and then the general contractor will charge more to the property owner. In other words, the general contractor makes a profit on the transaction, even though it did not actually perform the service. Under this common scenario, and depending upon the terms of the subcontract, the property owner may be a third-party beneficiary of the subcontract. (See *Gilbert Financial Corp. v. Steelform Contracting Co.* (1978) 82 Cal.App.3d 65, 69-70 [property owner was third party beneficiary of contract between general contractor and a subcontractor roofing company where owner was "more than incidentally benefitted by the contract"]; *Goonewardene*, *supra*, 6 Cal.5th at p. 830 [Supreme Court emphasized that its "intent-to-benefit caselaw remains pertinent in applying [the motivating purpose formulation] of the third party beneficiary doctrine"].)

"Because third party beneficiary status is a matter of contract interpretation, a person seeking to enforce a contract as a third party beneficiary '"must plead a contract which was made expressly for his [or her] benefit and one in which it clearly appears that he [or she] was a beneficiary."' [Citation.] [¶] '"'[E]xpressly[,]' [as used in [Civil Code section 1559] and case law,] means 'in an express manner; in direct or unmistakable terms; explicitly; definitely; directly.'" [Citations.] "[A]n intent to make the obligation inure to the benefit of the third party must have been clearly manifested by the contracting parties."' [Citation.] Although this means persons only incidentally or remotely benefited by the contract are not entitled to enforce it, it does not mean both of the contracting parties must intend to benefit the third party: Rather, it means the promisor . . . 'must have understood that the promisee . . . had such intent. [Citations.] No specific manifestation by the promisor of an intent to benefit the third person is required.'" (*Schauer v. Mandarin Gems of Cal., Inc.* (2005) 125 Cal.App.4th 949, 957-958.) Here, defendant must have understood that the veterinarian had the intent to benefit plaintiffs when it contracted with defendant for the private cremation.

8

The facts of *Goonewardene* are instructive in determining whether the motivating purpose of a contract was to provide a benefit to a third party. There, the plaintiff employee sued a payroll company, who had contracted with the plaintiff's employer, for breach of contract, alleging the failure to pay the plaintiff various wages. (*Goonewardene*, *supra,* 6 Cal.5th at p. 820.) The plaintiff did not allege she was privy to the contract between the payroll company and her employer, but instead contended she was entitled to bring a breach of contract action against the payroll company on a third party beneficiary theory, since the contract was "for the benefit of [the employer's] employees . . . ." (*Id.* at p. 833.) The Supreme Court disagreed for two reasons. First, the relevant motivating purpose of the contract was "simply to assist the employer in the performance of its required tasks, *not* to provide a benefit to its employees with regard to the amount of wages they receive." (*Id.* at p. 835, italics added.) Second, even if a motivating purpose were to provide a benefit to employees, the plaintiff was not entitled to sue the payroll company for breach of contract, because "it still may be inconsistent with the objectives of the contract and the reasonable expectations of the contracting parties to permit the employees to sue the payroll company for an alleged breach of the contract." (*Id*. at p. 836.) Accordingly, the court affirmed the trial court's order sustaining the payroll company's demurrer without leave to amend. (*Id.* at p. 842-843.)

As currently framed, the complaint fails to state a cause of action as a third party beneficiary of the contract between the veterinarian and defendant. In fact, plaintiffs failed even to raise the theory in their opposition to the demurrer. But if plaintiffs could plead the sort of facts we identified above, the case would be more analogous to *Lucas v. Hamm* (1961) 56 Cal.2d 583 (*Lucas*), a case *Goonewardene* described as one of the "two most prominent third party beneficiary decisions." (*Goonewardene, supra*, 6 Cal.5th at p. 831.) In *Lucas*, plaintiffs were the intended beneficiaries under a will. They sued the lawyer who drafted the will for breach of contract. But the contract to draft the will, of course, was between the decedent and the

9

lawyer. Nevertheless, the court allowed the beneficiaries to sue as third party beneficiaries. "Obviously the main purpose of a contract for the drafting of a will is to accomplish the future transfer of the estate of the testator to the beneficiaries named in the will, and therefore it seems improper to hold . . . that the testator intended only 'remotely' to benefit those persons." (*Lucas, supra*, at p. 589-590.) "Insofar as intent to benefit a third person is important in determining his right to bring an action under a contract, it is sufficient that the promisor must have understood that the promisee had such intent." (*Id*. at p. 591.)

Just as in *Lucas*, where the testator entered into a contract that was intended to benefit third parties, here, if the facts show that the veterinarian was acting for the purpose of benefitting plaintiffs, then its contract with defendant would likewise principally benefit plaintiffs. Plaintiffs have not pleaded such facts because they did not plead third party beneficiary status at all. However, in light of our guidance on the legal framework applicable to a third party beneficiary cause of action in this context, we will give plaintiffs another opportunity to amend.[1]

C. *Emotional Distress Damages*

Defendant nevertheless contends we should not grant leave to amend because, even if plaintiffs have standing to assert a contract claim, the only damages they suffered—emotional distress—is not an available remedy. While that is ordinarily the case, this action falls under an exception to the rule.

Except for a potential award of nominal damages, a breach of contract is not actionable without damages. (*Bramalea California, Inc. v. Reliable Interiors, Inc.* (2004) 119 Cal.App.4th 468, 473.) Plaintiffs acknowledge they were fully

---

[1] Plaintiffs are entitled to seek leave to amend even though they did not seek such relief in the trial court. (Code Civ. Proc., § 472c, subd. (a).) They sought such relief here.

10

compensated for the cost of the private cremation by the veterinarian, and thus they have no economic damages. They seek damages for emotional distress. However, "damages for mental suffering and emotional distress are generally not recoverable in an action for breach of an ordinary commercial contract in California." (*Erlich v. Menezes* (1999) 21 Cal.4th 543, 558 (*Erlich*).) There are two exceptions to this rule: (1) when the emotional distress caused by the breach is accompanied by physical injury; or (2) when "'the breach is of such kind that serious emotional disturbance was a particularly likely result.'" (*Ibid.*) Here, there was no physical injury. That leaves only the second exception.

For this exception, the *Erlich* court specified that "when the express object of the contract is the mental and emotional well-being of one of the contracting parties," then that party can collect damages for emotional distress (*Erlich*, *supra*, 21 Cal.4th at p. 559.) "Courts have carved out a narrow range of exceptions to the general rule of exclusion where emotional tranquility is the contract's essence." (*Id.* at p. 560; see *Chelini v. Nieri* (1948) 32 Cal.2d 480 [mortician's failure adequately to preserve a corpse permitted contract damages arising from emotional shock at seeing rotted corpse]; *Windeler v. Schemers Jewelers* (1970) 8 Cal.App.3d 844 [emotional distress damages recoverable for breach of contract where jeweler lost plaintiff's family heirlooms]; *Ross v. Forest Lawn Memorial Park* (1984) 153 Cal.App.3d 988 [cemetery's breach of agreement to keep burial service private and to protect grave from vandalism permitted emotional distress damages].)

That exception applies here. The sole purpose of a private cremation of a pet is the emotional tranquility of the owner. There is no economic benefit to a private cremation—to the contrary, it is more expensive than a group cremation. That additional cost is incurred solely for an emotional benefit. That fact is reflected in defendant's alleged marketing material. According to the complaint, defendant advertised the emotional benefit of a private cremation, professing that "our pets are as much a part of the family as any human, deserving the same equal, loving treatment." Its Web site

11

described one of its goals was "to provide [customers] with a dignified and proper farewell to [their] beloved pet." Plainly, this is an appeal to the emotional satisfaction of potential customers. Accordingly, to the extent that plaintiffs can allege they are third party beneficiaries of the contract between the veterinarian and defendant, emotional distress damages are available.

C. *Applicable Contract Claims*

Assuming plaintiffs can adequately plead third party beneficiary status, causes of action for breach of contract and breach of bailment can be stated. But the cause of action for breach of the implied covenant of good faith and fair dealing is superfluous. "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as *no additional claim is actually stated*." (*Careau & Co. v. Security Pacific Business Credit, Inc*. (1990) 222 Cal.App.3d 1371, 1395, italics added.) That is the case here. The only breach alleged by plaintiff in their bad faith cause of action is the failure to conduct a private cremation as promised. Accordingly, the court did not err by sustaining the demurrer to the cause of action for breach of the implied covenant of good faith and fair dealing.

*Tort Claims*

Plaintiffs contend their two tort claims (trespass to chattel and negligence) should survive because the complaint sufficiently pleaded a factual basis supporting both causes of action. As to the cause of action for trespass to chattel, plaintiffs argue there were factual allegations showing defendant's intentional interference with their property. As to the cause of action for negligence, plaintiffs contend the complaint adequately pleaded facts supporting defendant's duty to avoid causing emotional distress in

12

connection with the cremations. We review the court's order de novo. We conclude the court erred on both counts.

#### A. *Trespass to Chattel*

Plaintiffs contend the complaint pleaded a factual basis supporting their cause of action for trespass to chattel. Trespass to chattel "lies where an intentional interference with the possession of personal property has proximately caused injury." (*Thrifty-Tel, Inc. v. Bezenek* (1996) 46 Cal.App.4th 1559, 1566.) Emotional distress damages may be recovered for a trespass to chattel. (*Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1606-1608 (*Plotnik*) [allowing recovery of emotional distress damages from trespass to chattel arising from defendant's act of intentionally striking the plaintiff's dog with a bat].)

The court grounded its ruling on two bases: that plaintiffs' "right to the ashes has not been interfered with," and "there are no apparent measurable damages from the comingling." To those arguments, defendant adds that the complaint fails to allege *intentional* conduct.

We are puzzled by the court's first basis. We must assume the allegations of the complaint are true. (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591.) Plaintiffs allege defendant "cremated Plaintiffs' dogs in group cremations that mixed the cremains of multiple animals and/or remains," and that the remains of group cremations are scattered at sea. Plaintiffs allege they did not receive their pets' ashes, which were instead comingled with the ashes of other animals. Indeed, the court's second basis recognizes that the ashes were "comingled." We would be hard pressed to imagine a greater interference with the one's property than having it scattered at sea.

The court's second basis—that plaintiffs failed to allege recoverable damages—fails for two reasons. To start with, emotional distress damages are available in a trespass to chattel action. In *Plotnik*, a trespass to chattel case that involved

13

intentional injury to an owner's dog, another panel of this court concluded emotional distress damages were recoverable. (*Plotnik*, *supra*, 208 Cal.Ap.4th at p. 1607.) The *Plotnik* court reasoned that the cause of action trespass to chattel is the little brother of conversion, which permits recovery of emotional distress damages, and bears obvious relation to trespass to real property, which also permits recovery of emotional distress damages. (*Ibid.*) We agree with the analysis in *Plotnik*. Alternatively, even if plaintiffs could not recover emotional distress damages, they could, at minimum, recover nominal damages. (See *Genisman v. Carley* (2018) 29 Cal.App.5th 45, 53 [nominal damages available "[w]here there is no loss or injury to be compensated but where the law still recognizes a technical invasion of a plaintiff's rights or a breach of a defendant's duty"].) For both reasons, the court's rationale does not withstand analysis.

Defendant's argument that the complaint fails to allege *intentional* misconduct simply fails to give the allegations the credit they are due. The complaint literally alleges defendant's conduct was "intentional" in the very first sentence of the complaint. It repeats that allegation throughout, and in particular in connection with the trespass to chattel cause of action. Although, as defendant points out, allegations of intentional misconduct cannot be "mere[ly] conclusory" (*Charpentier v. Von Geldern* (1987) 191 Cal.App.3d 101, 114) that is not the case here. Plaintiffs' allegation of intentional misconduct is corroborated by the allegation that defendant *twice*, over the course of more than a year, failed to return plaintiffs' pets' cremains. Once could be a mixup; twice suggests intentionality. Moreover, defendant has the motive and means to deceive customers: group cremations are cheaper, and customers are unlikely to notice any discrepancies between a particular pet's ashes and any other ashes. These allegations and circumstances adequately allege intentional interference. Accordingly, the court erred in dismissing the trespass to chattel cause of action.

14

B. *Negligence*

Plaintiffs contend the complaint properly stated a cause of action for negligence, which encompasses negligent infliction of emotional distress. We agree.

"'[T]he *negligent* causing of emotional distress is not an independent tort, but the tort of *negligence*. [Citation.] The traditional elements of duty, breach of duty, causation, and damages apply. [¶] Whether a defendant owes a duty of care is a question of law. Its existence depends upon the foreseeability of the risk and a weighing of policy considerations for and against imposition of liability." (*Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1072.) "The law in California imposes a duty to avoid causing emotional distress in two general instances": (1) "'bystander'" situations wherein a plaintiff seeks to recover damages as a witness to the injury of another (*McMahon v. Craig* (2009) 176 Cal.App.4th 1502, 1509 (*McMahon*)); and (2) "'direct victim'" situations wherein the emotional distress damages result from a duty owed the plaintiff that is assumed by the defendant as a matter of law, or that arises out of a special relationship between the plaintiff and the defendant. (*Id.* at p. 1510.) Only the second of those instances is relevant here.

We conclude defendant owed a duty to plaintiffs arising out of a special relationship between it and plaintiffs. We find guidance from *Christensen v. Superior Court* (1991) 54 Cal.3d 868 (*Christensen*), which also arose in the context of a demurrer. There, the plaintiffs alleged the defendant crematory had mishandled human remains by harvesting organs without permission, then cremating 10-15 bodies together at a time, and then placing "cremated remains in urns or other containers without preserving their integrity or identity." (*Id.* at p. 879.) The relationship between the plaintiffs (family members of the decedent) and the crematory bore similar relationship to our case: certain family members contracted with a mortuary, and the mortuary contracted with the crematory. (*Id.* at p. 877.) The principal issue on appeal was whether the family members who had not contracted with the mortuary, and who did not have a possessory

15

interest in the remains under Health and Safety Code section 7100, could state a claim for negligence against the crematory. (*Id.* at p. 875.)

The *Christensen* court held they could. "Defendants here assumed a duty to the close relatives of the decedents for whose benefit they were to provide funeral and/or related services. They thereby created a special relationship obligating them to perform those services in the dignified and respectful manner the bereaved expect of mortuary and crematory operators." (*Christensen*, *supra,* 54 Cal.3d at pp. 890-891.) Analogizing the negligence action to one for breach of contract, where emotional distress damages are available for the mishandling of remains, it quoted a Colorado case as follows: "'A contract whereby a mortician agrees to prepare a body for burial is one in which it is reasonably foreseeable that breach may cause mental anguish to the decedent's bereaved relations. "One who prepares a human body for burial and conducts a funeral usually deals with the living in their most difficult and delicate moments . . . . The exhibition of callousness or indifference, the offer of insult and indignity, can, of course, inflict no injury on the dead, but they can visit agony akin to torture on the living. So true is this that the chief asset of a mortician and the most conspicuous element of his advertisement is his consideration for the afflicted. A decent respect for their feelings is implied in every contract for his services."'" (*Id.* at p. 895.) It noted that the very purpose of a proper burial is to "alleviate existing and avoid future emotional distress arising from the death." (*Id.* at p. 899.)

The principal difference between this case and *Christensen*, of course, is that here we deal with pet remains rather than human remains. In all other respects, *Christensen* is closely on point. It is certainly true that people generally form stronger bonds with human family members than with pets, but that is a difference in degree, not in kind. As our high court long ago recognized regarding dogs, "there are no other domestic animals to which the owner or his family can become more strongly attached, or the loss of which will be more keenly felt." (*Johnson v. McConnell* (1889) 80 Cal.

16

545, 549.) "We have come a long way from the old common law concept of a dog not even being considered property. Not only is he more than property today, he is the subject of sonnets, the object of song, the symbol of loyalty. Indeed, he is man's best friend." (*Katsaris v. Cook* (1986) 180 Cal.App.3d 256, 270 (conc. & dis. opn. of Sabraw, J.).) While the distinction between pet remains and human remains may affect the degree of harm caused by mishandling the remains, it does not change the fundamental relationship that the crematory has to the owner where a private cremation is sought. In both cases, the *raison d'etre* of the relationship is to provide emotional solace to the survivors. The very fact that the owner incurred the additional expense of a private cremation signals that the owner shared a strong emotional bond with the pet. That was not only foreseeable, but it was a pillar of defendant's marketing strategy. In offering a private cremation service predicated on the dignified treatment of pet remains, defendant entered into a special relationship and assumed a duty to use reasonable care in avoiding emotional harm to the owner.

Our conclusion is consistent with the various policy considerations courts consider in addition to foreseeability in determining whether a duty exists, which generally involve balancing the harm to the plaintiff and the moral approbation of defendant's conduct against the burden on society of imposing a duty. (*See Christensen, supra,* 54 Cal.3d at pp. 885-886 ["'in considering the existence of "duty" in a given case several factors require consideration including "the foreseeability of harm to the plaintiff, the degree of certainty that plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved"'].) Our holding is limited to cases in which a crematory has offered private cremation services for the solace of grieving pet owners. A negligence action has

17

long been available in the context of human remains, with no apparent detriment to either society or industry. We are confident the same will be the case in the context of pet remains.

In contending no duty existed, defendant relies principally on *McMahon, supra,* 176 Cal.App.4th 1502, where we held a pet owner could not recover emotional distress damages arising from veterinary malpractice resulting in the death of plaintiff's dog. While we recognized that the owner's emotional harm might be foreseeable from veterinary malpractice, "the veterinarian's medical care is directed only to the pet. Thus, a veterinarian's malpractice does not directly harm the owner in a manner creating liability for emotional distress." (*Id.* at p. 1510.) We reasoned, "The contract between [the owner] and [the veterinarian] to treat [the dog] did not by itself demonstrate defendants undertook a duty to protect [the owner's] mental and emotional tranquility." (*Id.* at p. 1513.) "[A] more explicit undertaking by defendants is required to impose liability for negligent infliction of emotional distress." (*Id.* at p. 1514.)

The critical distinction between this case and *McMahon* is that here we have that more explicit undertaking. Emotional harm was not merely foreseeable from defendant's negligence, plaintiffs' emotional wellbeing was the product it was selling.

## DISPOSITION

The judgment is affirmed in part and reversed in part. The judgment is affirmed insofar as it dismissed the second cause of action (breach of contract), fourth cause of action (negligent infliction of emotional distress), fifth cause of action (deceptive trade practices), sixth cause of action (breach of bailment), and seventh cause of action (breach of implied covenant of good faith and fair dealing). The judgment is reversed insofar as it dismissed the first cause of action (trespass to chattel), and third cause of action (negligence). The court is directed to permit plaintiffs an opportunity to

18

amend the operative complaint to allege breach of contract and breach of bailment causes of action as third party beneficiaries.  Plaintiffs shall recover their costs incurred on appeal.


                                        IKOLA, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ARONSON, J.

19