Filed 11/26/24  Harris v. Dignity Health CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| RACHEL HARRIS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>DIGNITY HEALTH, et al.,<br><br>    Defendants and Respondents. | 2d Civ. No. B335165<br>(Super. Ct. No. 56-2021-00555164-CU-MM-VTA)<br>(Ventura County) |

Rachel Harris appeals from the judgment entered after the trial court granted a motion for summary judgment filed by respondents Dignity Health, dba St. John's Pleasant Valley Hospital (Hospital), and Elizabeth Galloway.  The trial court determined that appellant's medical malpractice action against respondents was barred by a one-year statute of limitations.  The statute started to run when appellant suspected that her injury had been caused by respondents' negligence.  Appellant contends the limitations period was tolled because she "lack[ed] the legal capacity to make decisions" within the meaning of Code of Civil

Procedure section 352, subdivision (a) (section 352(a)).[1]  We disagree and affirm.

*Factual Background*

On May 4, 2018, appellant had gallbladder surgery at Hospital.  After the surgery, she suffered a stroke.  Respondent Galloway, a nurse and Hospital's employee, was caring for appellant after the surgery.  Appellant claims Galloway negligently caused the stroke by failing to monitor her blood pressure and to administer the drug Labetalol.  Appellant's complaint alleges that respondents' "negligence caused [her] to suffer a stroke, coma, left-sided hemiparesis [weakness or paralysis], left-sided blindness, depression, and suicidal ideation, as well as inability to speak, breathe, and swallow."

Appellant "remained in a coma until approximately May 16, 2018 . . . ."  "On June 6, 2018 [appellant] was seen by Dr. David Turk who advised her [that] she was simply the victim of bad luck, and her surgery had been too stressful for her body."

On October 8, 2019, appellant was admitted to Canyon Vista Medical Center with a diagnosis of "Major depression with anxious features."  Her medical records show that the "Justification for Hospitalization" was "suicidal ideation with intent."  She was discharged six days later on October 14, 2019.

In October 2018 or 2019 appellant "attended [a] brain injury support group."  In her reply brief appellant states, "While [she] testified that her best memory for the date of the brain injury support group was October 2019, investigation showed the

---

[1] Unless otherwise stated, all statutory references are to the Code of Civil Procedure.

2

support group actually occurred in October 2018.  At least that's what the records of the support group show."

"As of October, 2019, [appellant] considered that her injury had been the result of malpractice, because of statements made by other patients in the brain injury support group . . . . [Appellant] also 'had papers around [her] to shore up [her] thinking and analysis and facts.'"

Appellant "first *attempted* to consult with an attorney with regard to a medical malpractice action . . . around October or November of 2019."  (Italics added.)  On December 10, 2019, she contacted her present counsel, Malcolm Tator.  According to the complaint, "[o]n December 10, 2019 [appellant] procured an attorney."

Tator investigated the case.  The complaint alleged that, "[a]fter consulting with three doctors, [Tator] was unable to find a causal connection of any nurse negligence to [appellant's] injury until February 20, 2021."  On that date an anesthesiologist informed Tator that "the failure of nurse Galloway to administer the Labetalol as ordered by [another doctor] caused [appellant's] stroke."

Tator "forwarded [his] contract opinion letter to [appellant on] March 1, 2021."  Appellant signed the letter on May 3 or 4, 2021.  The malpractice action was filed on June 7, 2021.

In August 2023 appellant declared: "I've not been right in the head since my May 4, 2018 stroke."  Upon awakening from the coma, "I found myself paralyzed on the left side and blind to the left in both eyes."  "I . . . suffered new mental deficiencies.  I lost control of my emotions and impulse control.  I lost executive function, so that I cannot concentrate, organize, follow instructions, or schedule.  I find it extremely difficult to multitask

3

or organize tasks sequentially.  [¶]  [] In addition, my disabilities exacerbated my pre-existing depression, eventually resulting in suicidal ideation and my hospitalization."  "The result of the lack of my executive functioning is that while I initially understand the need for something, like investigating the possibility my stroke was the result of malpractice, I temporarily forget and do other things instead, not appreciating the negative consequences. My depression was also an anchor on my ability and motivation to do things, again camouflaging the potential negative consequences."

*Motion for Summary Judgment and Opposition to Motion*

In their motion for summary judgment, respondents claimed appellant's action is barred by the one-year statute of limitations of section 340.5.  The section provides, "[T]he time for the commencement of [an] action [based upon medical malpractice] shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first."

Respondents argued: "[Appellant's] discovery of her injury occurred in October, 2019, and that is when the statute of limitations began to run."  "Assuming the latest possible date for purposes of computation, the one-year statute of limitations commenced on October 31, 2019.  The statute was . . . tolled for six months [from April 6, 2020 to October 1, 2020] as a result of Executive Order No. 9, which was enacted due to Covid . . . ." The statute of limitations expired on April 26, 2021, more than one month before the action was filed on June 7, 2021.

In her opposition to the motion for summary judgment, appellant asserted that, pursuant to section 352(a), "the one-year

statute of limitations was tolled immediately by [appellant's] brain damage from May 4, 2018 to at least July 20, 2022." Section 352(a) provides, "If a person entitled to bring an action . . . is, at the time the cause of action accrued . . . lacking the legal capacity to make decisions, the time of the disability is not part of the time limited for the commencement of the action."

*Trial Court's Ruling*

In its written ruling granting the motion for summary judgment, the trial court reasoned: "[Appellant] admits she did not file suit until June [7], 2021, despite having the suspicion [no later than October 2019] that the stroke and its severe consequences might be the result of medical negligence . . . . Moreover, [appellant] attempted to consult an attorney in connection with her suspicions around October or November 2019." (Record citations omitted.)

The trial court continued: "Using October 31, 2019, as the date of accrual, and applying the six-month Covid-19 emergency order tolling [the limitations period], the one-year statute of limitations expired on April 26, 2021. The Complaint was filed on June 7, 2021. The evidence is materially undisputed that the statute of limitations had expired by the time that [appellant] filed the Complaint. [¶] Thus, the Court finds that [respondents] have met their burdens of production and persuasion that there is no material triable dispute that the one-year statute of limitations of section 340.5 bars this action for medical negligence. The burden shifts to [appellant] to produce evidence of a material triable dispute that the action was tolled. The Court finds [appellant] has failed to meet her burden in this regard."

The trial court explained: "Under section 352, subdivision (a), the [plaintiff's] incapacity must be present 'at the time the cause of action accrued.' . . . Thus, in order to gain the benefit of section 352 tolling, [appellant] must produce evidence of her incompetence or lack of capacity after October, 2019.  The Court finds [she] has failed to present any such evidence."  "[Appellant] has failed to produce any expert declaration concerning her lack of capacity or competency.  None of the evidence submitted by [appellant] in opposition to the motion fills that evidentiary void."  "The lay opinion of [appellant] concerning her mental acuity and symptoms of impairment cannot be used to establish incompetence or insanity.  (*Bennett v. Shahhal* (1999) 75 Cal.App.4th 384, 392 ['Bennett's lay opinion was insufficient to establish any mental disability'] . . . .)"  "At best, [appellant] has presented some evidence that she may suffer mental deficits, but this showing falls far short of that necessary to toll the running of the statute of limitations."

*Summary Judgment Principles and Standard of Review*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)  "'A defendant moving for summary judgment has the burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action.' [Citation.]  The expiration of the applicable statute of limitations is one such complete defense.  [Citations.]  A defendant moving for summary judgment based on the affirmative defense of the statute of limitations carries its burden

6

by presenting evidence establishing that the plaintiff's claim is time barred. [Citation.] 'It then falls to plaintiff[ ] to counter with evidence creating a dispute about a fact relevant to that defense.' [Citation.] That is, the plaintiff must submit evidence that would allow a 'reasonable trier of fact [to] find in plaintiff['s] favor on the statute of limitations issue.' [Citations.] 'If defendant[ ] presented evidence establishing the defense and plaintiff[ ] did not effectively dispute any of the relevant facts, summary judgment was properly granted. . . .'" (*Genisman v. Carley* (2018) 29 Cal.App.5th 45, 49 (*Genisman*).)

"On appeal we conduct a de novo review, applying the same standard as the trial court. [Citation.] . . . We must '"consider all of the evidence" and "all" of the "inferences" reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party.'" (*Franklin v. Santa Barbara Cottage Hospital* (2022) 82 Cal.App.5th 395, 403 (*Franklin*).)

"'We must presume the judgment is correct . . . .' [Citation.] '"As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority . . . ." . . .'" (*Franklin, supra*, 82 Cal.App.5th at p. 403.)

*The Trial Court Did Not Err in*
*Granting the Motion for Summary Judgment*

"Summary judgment was proper under section [340.5's] one-year limitations period only if the undisputed facts compel the conclusion that [appellant] was on inquiry notice of [her] claim more than one year before the complaint was filed [excluding the period tolled because of the Covid pandemic].

Inquiry notice exist[s] where 'the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them.' [Citation.] "'A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." . . .'" (*Genisman*, *supra*, 29 Cal.App.5th at pp. 50-51.)

In the trial court appellant conceded it is "[u]ndisputed" that, "[a]s of October 2019, [she] considered that her injury had been the result of malpractice . . . ." Therefore, the one-year statute of limitations began to run no later than October 31, 2019. Excluding the period during which the statute was tolled because of the Covid pandemic, the date of inquiry notice was more than one year before the complaint was filed on June 7, 2021. Thus, respondents carried their burden of "presenting evidence establishing that [appellant's] claim is time barred." (*Genisman*, *supra*, 29 Cal.App.5th at p. 49.) The burden shifted to appellant to "submit evidence that would allow a 'reasonable trier of fact [to] find in [her] favor on the statute of limitations issue.'" (*Ibid*.)

To determine whether appellant carried her burden, we must first define section 352(a)'s phrase, "lacking the legal capacity to make decisions." Section 352(a) formerly provided that the statute of limitations is tolled if a person was "insane" when the cause of action accrued. "In 2014, the California Legislature amended § 352(a) to replace the term 'insane' with the phrase 'lacking the legal capacity to make decisions.' 2014 Cal. Stat. ch. 144, § 4 [Assem. Bill no. 1847]. Courts continue to

rely on pre-2014 case law in interpreting the amended statute." (*In re Mirapex Products Liability Litigation* (8th Cir. 2019) 912 F.3d 1129, 1132, fn. 2; see *Estate of Stern v. Tuscan Retreat, Inc.* (9th Cir. 2018) 725 Fed.Appx. 518, 522, fn. 3 (*Estate of Stern*) ["Plaintiffs . . . claim that there is a legal difference between the current Section 352(a), which employs the phrase 'legal capacity,' and the version in effect when the claims here accrued, which used the term 'insane.' [Citation.]  There is none.  This amendment simply replaced 'offensive and outdated terms'"]; Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1847 (2013-2014 Reg. Sess.) as amended Apr. 22, 2014 ["This bill seeks to update various California code provisions . . . in order to remove outdated and offensive terms once used to describe various kinds of mental and psychological conditions and replace them with more current, less offensive terms"].)

Under the pre-2014 case law, "For purposes of Code of Civil Procedure section 352, a plaintiff is 'insane' if 'incapable of caring for his [or her] property or transacting business or understanding the nature or effects of his [or her] acts . . . .'" (*Alcott Rehabilitation Hospital v. Superior Court* (2001) 93 Cal.App.4th 94, 101 (*Alcott*); accord, *Feeley v. Southern Pacific Transportation Co.* (1991) 234 Cal.App.3d 949, 951-952.)  "Moreover, incapacity must exist at the time the claims accrue, and tolling lasts only until the plaintiff regains capacity."  (*Estate of Stern*, *supra*, 725 Fed.Appx. at p. 522; see § 357 ["No person can avail himself of a disability, unless it existed when his right of action accrued"].)

Appellant asserts, "The crux of this appeal is whether [she] . . . submitted evidence of 'incompetence or lack of capacity after October 2019. . . .'"  Appellant claims she provided the requisite evidence because "[s]he has recorded difficulties in memory,

9

problem solving, and understanding.  Up through October 14, 2019 she produced hospital records showing major depression with anxious features and suicidal ideation which remained after discharge.  On January 4, 2020 the Arizona Vision Therapy Center found obstacles with her following directions, retention, and management, and Psychiatrist James Reed repeated the diagnosis of major depressive disorder after finding her tearful, labile, and complaining of persistent confusion.  Kristin Riordan tested [appellant], finding weakness in recall, organization, and emotional control."  (Record citations omitted.)  Moreover, "the physician at the Institute of Neurological Recovery . . . found posttraumatic stress disorder accompanied by executive function deficits."

The evidence allegedly provided by appellant shows that she suffered from mental health conditions.  But appellant does not show that these conditions rendered her "'incapable of caring for [her] property or transacting business or understanding the nature or effects of [her] acts'" when her cause of action accrued in October 2019.  (*Alcott*, *supra*, 93 Cal.App.4th at p. 101.)  "Under Section 352(a), even 'a person who is adjudged mentally ill [for commitment purposes] may nevertheless be capable of transacting business and carrying out h[er] affairs, either during occasional lucid intervals or throughout h[er] hospitalization.'" (*Estate of Stern*, *supra*, 725 Fed.Appx. at p. 522, brackets in original; see also Prob. Code § 810, subd. (b) ["A person who has a mental or physical disorder may still be capable of contracting, conveying, marrying, making medical decisions, executing wills or trusts, and performing other actions"]; *id*., § 811, subd (d) ["The mere diagnosis of a mental or physical disorder shall not be

sufficient in and of itself to support a determination that a person is of unsound mind or lacks the capacity to do a certain act"].)[2]

The evidence supports appellant's capacity to make decisions when her cause of action accrued in October 2019. After her stroke, she had the capacity to continue to perform work for her employer, the United States Department of Defense (the Department). In her February 17, 2023 deposition, appellant testified that on August 2, 2018, three months after her stroke, she was "discharged from the California Rehab Institute." "[F]or about six months" after her discharge, she performed "telework" at home for the Department. "[Her] work colleagues were bringing [her] home contracting files for [her] to review . . . ." She "was trying to stay laser focused on keeping [her] job and not being forced into medical retirement."

Appellant eventually took a medical retirement. She testified that, since her retirement, she has "been trying almost constantly . . . to try to get another job doing what I was doing [for the Department], because . . . it's mostly using my brain . . . ." In other words, her physical impairment would not impede her from doing work similar to the work she had done for the Department because that work involved mental effort, and her mental functioning was not impaired.

In October and November 2019 appellant searched for an attorney. In December 2019 she retained Tator to represent her in the malpractice case. That she was capable of searching for and retaining an attorney shows that she had "the legal capacity to make decisions" within the meaning of section 352(a). (*Hsu v.*

---

[2] Probate Code sections 810 and 811 are part of "the Due Process in Competence Determinations Act." (Stats. 1995, ch. 842, § 12.)

*Mt. Zion Hospital* (1968) 259 Cal.App.2d 562, 575 ["the basic question to be resolved by the jury is whether the allegedly insane plaintiff is sufficiently aware of the nature or effects of his acts to be able to comprehend such business transactions as the hiring of an attorney and the instigation of a legal action. If he is so aware, then the statute will begin to run against him"].)

Furthermore, on October 14, 2019, when appellant was discharged from Canyon Vista Medical Center, Dr. Ronald Rosenberg described her "Thought Process" as "logical, Goal Directed," with "no delusions, hallucinations." Her "Insight" and "Judgment" were "improved." Her "Intelligence" was "Above average" and her "Concentration, attention [were] not distractible." She had "mild anxiety." Her "Mood" was described as "euthymic." "In psychiatry and psychology, euthymia is a normal, tranquil mental state or mood" <https://en.wikipedia.org/ wiki/Euthymia_(medicine)> [as of Sept. 26, 2024], archived as <https://perma.cc/DJ3L-FM7F>. Dr. Rosenberg wrote, "Patient was discharged in improved condition, increased insight, increased coping skil[l]s." Appellant's mental condition on October 14, 2019, is highly probative of her legal capacity to make decisions 17 days later when her cause of action is deemed to have accrued.

Accordingly, appellant did not carry her burden to "submit evidence that would allow a 'reasonable trier of fact [to] find in [her] favor on the statute of limitations issue.'" (*Genisman*, *supra*, 29 Cal.App.5th at p. 49.) She did not show that, when her cause of action accrued in October 2019, she was "'incapable of caring for [her] property or transacting business or understanding the nature or effects of [her] acts . . . .'" (*Alcott*, *supra*, 93 Cal.App.4th at p. 101.)

12

*Disposition*

The judgment is affirmed.  Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.


                                        YEGAN, J.

We concur:


        GILBERT, P. J.


        CODY, J.

Matthew P. Guasco, Judge

Superior Court County of Ventura

_____


Law Offices of Malcolm R. Tator, for Plaintiff and Appellant.

Cole Pedroza and Kenneth R. Pedroza, Nathan J. Novak; Clinkenbeard, Ramsey, Spackman & Clark, for Defendants and Respondents.