Filed 4/16/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE POLICE RETIREMENT SYSTEM OF ST. LOUIS et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> LARRY PAGE et al., <br><br> Defendants and Respondents. | H043220 <br> (Santa Clara County <br> Super. Ct. No. 1-14-CV-261485) |

In this derivative action, shareholders of Google, Inc. allege the corporation was harmed by executives who agreed to refrain from actively recruiting employees working for competitors. The trial court granted the defendants' summary judgment motion, finding the action barred by the applicable statute of limitations. We will affirm.

## I.  BACKGROUND

Plaintiffs are three Google shareholders who brought separate derivative suits that were later consolidated. Defendants are officers and directors of Google, with the corporation itself included as a nominal defendant.[1] The lawsuit stems from agreements Google executives made with competitors regarding the recruitment of employees. The nature of the agreements was that Google would not "cold call" (meaning initiate contact

---

[1] Defendants move for an order correcting the name of the corporate defendant to read "Google, LLC" instead of "Google, Inc.," because after the lawsuit was filed the company changed its name. Since the docket correctly reflects the parties named in the complaint, we deny that motion.

for the purpose of recruiting) employees of certain competitors, such as Apple. The competitors similarly agreed to not cold call Google employees.

In September 2010, the United States Department of Justice filed a civil antitrust action against Google and several other companies that participated in the no cold call agreements. The complaint alleged that the agreements illegally diminished competition for high tech employees, denying them job opportunities and ultimately suppressing wages. The Department of Justice sought an injunction prohibiting the companies from engaging in such conduct in the future. The action was resolved the same day it was filed: Google, along with the other companies, entered into a stipulated judgment in which they admitted no liability but agreed to be bound by an injunction prohibiting the no cold call arrangements.

Google posted a statement online announcing the settlement of the antitrust action, denying any wrongdoing, and indicating that to resolve the matter it had agreed to cease the no cold call practice. The statement included a link to a press release from the Department of Justice that described the settlement terms. There was widespread media coverage of the antitrust action. Articles about the Department of Justice investigation into Google's hiring practices and the settlement of the enforcement action appeared in The Wall Street Journal, The New York Times, and the San Francisco Chronicle, among many other publications. The matter was also reported on in at least 30 television news broadcasts.

In mid-2011, several class action lawsuits were filed against Google and the other companies named in the Department of Justice action. The class action suits were brought by employees who alleged that the cold calling restrictions were illegal and had caused them wage losses. The cases were removed to federal court and consolidated, and the consolidated action sought over $3 billion in damages on behalf of more than 100,000 employees.

2

This suit was filed in February 2014.  Plaintiff shareholders sued to recover damages caused to Google by defendants' decision to enter into the anti-competitive agreements.  The complaint asserted several causes of action, all based on the theory that the company had been harmed because it suffered financial losses resulting from the Department of Justice antitrust action and the employee class action suits.  It also alleged the agreements made by defendants harmed the company's reputation and stifled innovation.  Defendants moved for summary judgment on the ground that the entire action was barred by the applicable three-year statute of limitations.  The trial court granted the motion and entered judgment in favor of defendants, finding the action untimely because plaintiffs should have been aware of the facts giving rise to their claims by at least the time of the Department of Justice antitrust action in 2010.

## II.    DISCUSSION

### A. STANDARD OF REVIEW

We review a trial court's decision granting summary judgment de novo, and liberally construe the evidence in favor of the party opposing the motion.  (*Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 206.)  To decide whether summary judgment was properly granted, we engage in the same analysis that was required of the trial court.  (*Hamburg v. Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 503.)  Since defendants moved for summary judgment based on the affirmative defense of the statute of limitations, they have the "burden of persuasion" on that point, meaning they must convince the court that no reasonable trier of fact could find in plaintiffs' favor on the statute of limitations issue.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 [In moving for summary judgment, a defendant may meet the burden of establishing that a cause of action has no merit by showing there is a complete defense to that cause of action.].)  To accomplish that, defendants must first present evidence establishing that plaintiffs' claims are time barred.  It then falls to plaintiffs to counter with evidence creating a dispute about a fact relevant to that defense.  (*Id.* at p. 850.)  If defendants

3

presented evidence establishing the defense and plaintiffs did not effectively dispute any of the relevant facts, summary judgment was properly granted.  (Code Civ. Proc., § 437c, subd. (p)(2).)

## B. CHOICE OF LAW

The parties agree that we must apply the law of the state of Delaware in analyzing the limitations issue here.  Because only one state should have the authority to regulate the affairs of a corporation, the "internal affairs doctrine" generally requires application of the law of the state of incorporation to any dispute regarding relations between the corporation and its shareholders or officers and directors.  (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1106, fn. 2, citing *Edgar v. MITE Corp.* (1982) 457 U.S. 624, 645.) Since Google was incorporated in Delaware, we will apply Delaware law to determine whether plaintiffs' claims are time barred.  (See *Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1544 [applying Delaware statute of limitations to a dispute governed by Delaware law].)[2]

## C. SUMMARY JUDGMENT WAS PROPERLY GRANTED

The statute of limitations for plaintiffs' claims is three years.  (10 Del. C., § 8106 [providing for a three-year statute of limitations for non-personal injury claims].)  The causes of action alleged in the complaint are all based on harm flowing from the no cold call agreements made by defendants, conduct that predated the September 2010 Department of Justice antitrust action.  Plaintiffs did not file this action until February 2014, more than three years after the events giving rise to their claims, so they cannot—and do not—argue defendants' conduct *occurred* within the limitations period.

---

[2] Our citations to Delaware authorities include unpublished opinions because "unreported Delaware court opinions are frequently cited by Delaware courts," and in Delaware an opinion need not be reported to have persuasive value.  (*Nationwide General Ins. Co. v. Thomas* (Del. 1995) 1995 Del. Super. Lexis 129, p. 11; see also *Aprahamian v. HBO & Co.* (Del. 1987) 531 A.2d 1204, 1207 [unpublished opinions are not necessarily *stare decisis* but are entitled to great deference].)

Rather, plaintiffs contend that the operative facts were not *known* to them until much later, within three years of when they filed the lawsuit.

Delaware law allows for a limitations period to be tolled during the time the facts underlying a claim were "so hidden that a reasonable plaintiff could not timely discover them," including when the operative facts were fraudulently concealed or where the plaintiff relied in good faith on a fiduciary who prevented plaintiff from gaining a full understanding of the circumstances. (*In re Dean Witter Partnership Litig.* (Del. 1998) 1998 Del. Ch. Lexis 133, p. 19.) But the statute of limitations will be tolled only until a plaintiff has inquiry notice of the facts giving rise to the cause of action, meaning there is enough information available to prompt a reasonable person to commence an investigation that, if pursued, would lead to discovery of the harm. (*Pomeranz v. Museum Partners, L.P.* (Del. 2005) 2005 Del. Ch. Lexis 10, p. 11.) To determine whether summary judgment was proper here, we must decide if defendants have established beyond dispute that plaintiffs were on inquiry notice of their claims more than three years before the complaint was filed.

"Inquiry notice does *not* require *actual* discovery of the reason for the injury. Nor does it require plaintiffs' awareness of all of the aspects of the alleged wrongful conduct." (*In re Dean Witter Partnership Litig.*, *supra*, 1998 Del. Ch. Lexis 133, at p. 31.) Having all the facts necessary to articulate the wrong is not required; plaintiffs "may not simply wait until the details of the harm are provided to them before the statute begins to run." (*Pomeranz v. Museum Partners, L.P.*, *supra*, 2005 Del. Ch. Lexis 10 at p. 44.) We agree with the trial court that plaintiffs were on inquiry notice of potential harm from defendants' anti-competitive agreements no later than the time the Department of Justice antitrust action was publicized in September 2010. The publicly available complaint in that action alleged that "[b]eginning no later than 2006, Apple and Google agreed not to cold call each other's employees. Senior executives at Apple and Google reached an express no cold call agreement through direct and explicit communications.

5

The executives actively managed and enforced the agreement through direct communication." The complaint went on to allege that Google entered into similar agreements with other companies, and that the agreements restrained trade in violation of federal antitrust laws. Google publicly announced that it had resolved the antitrust action, and included a link to the Department of Justice press release detailing the terms of the settlement. The Department of Justice investigation and resulting enforcement action were widely reported by the media. Given those undisputed facts, no reasonable trier of fact could conclude that as of September 2010 plaintiffs did not have enough information to at least make them suspicious that the corporate officers and directors named as defendants were involved in anti-competitive recruiting agreements. Defendants have therefore established their statute of limitations defense as a matter of law and are entitled to summary judgment.

Relying on *In re Primedia, Inc. Shareholders Litigation* (Del. 2013) 2013 Del. Ch. Lexis 306 (*Primedia*), plaintiffs argue that even if there were enough information to suspect that Google officers and directors had participated in wrongdoing, inquiry notice requires a showing that an investigation would have yielded the facts necessary to "plead a viable claim." *Primedia* describes inquiry notice in a derivative action as a two-step process: "First, sufficient information must be available to arouse a reasonable stockholder's suspicions. Second, the reasonable stockholder must be able to commence an investigation and discover the facts necessary to plead the claim and survive the motion to dismiss." (*Id.* at pp. 39–40.) Plaintiffs contend an investigation at the time of the Department of Justice antitrust action would not have provided facts sufficient to plead an action that would survive a motion to dismiss (as required under *Primedia*), because it would not have revealed any misconduct by the officer and director defendants named in the complaint.

Unlike plaintiffs, we do not read *Primedia's* "viable claim" language as imposing any new or different criteria for the inquiry notice analysis. The standards for a

6

complaint to survive a motion to dismiss in Delaware are not especially onerous. The complaint's allegations are accepted as true, and the court must give the plaintiff the benefit of all reasonable inferences that can be drawn from the pleading. (*Solomon v. Pathe Communications Corp.* (Del. 1996) 672 A.2d 35, 38.) A motion to dismiss will be granted only if the court determines that "a plaintiff could prevail on no set of facts that can be inferred from the pleadings." (*Ibid.*) *Primedia* does not say that an initial investigation would have to yield the facts needed to prove the plaintiff's case—only facts giving rise to an inference suggesting plaintiff will prevail. (*Desimone v. Barrows* (Del. 2007) 924 A.2d 908, 929 [Under Delaware pleading standards, "a complaint must plead enough facts to plausibly suggest that plaintiff will ultimately be entitled to the relief she seeks."].) In this case, the inference necessary for plaintiffs to prevail under the theory of liability alleged in their complaint is that the officer and director defendants were involved in the anti-competitive agreements to the detriment of Google shareholders. By the year 2010, even without conducting any further investigation, plaintiffs had facts to support that inference: the Department of Justice had filed an antitrust action alleging that senior executives at Google agreed not to actively recruit certain competitors' employees, in violation of federal law. Although neither the allegations made by the Department of Justice nor Google's immediate settlement of the antitrust action *necessarily* mean that the company's directors and officers were involved with the no cold call agreements, those facts give rise to a reasonable inference that they were. Plaintiffs accordingly had sufficient information in 2010 to plead the claims alleged in this action.

In plaintiffs' view, they did not have enough information to put them on notice of their claims until 2012, when e-mails produced in discovery in the employee class action suit relating to the no cold call agreements first became publicly available. The e-mails include messages sent and received by the CEO of Google discussing the agreements, and plaintiffs characterize the e-mail disclosure as the first indication that high level

7

executives were aware of and participated in the agreements. "The difficulty for the plaintiffs is that their argument depends on the premise that inquiry notice only exists once they were aware of all material facts relevant to their claims. That is not the case." (*Pomeranz v. Museum Partners, L.P.*, *supra*, 2005 Del. Ch. Lexis 10, at pp. 46–47.) Plaintiffs conflate the concept of proving a claim with that of being aware of a claim. Certainly, the e-mails would be useful in proving the claims they have alleged. But as already discussed, the facts available almost two years earlier would have caused a reasonable shareholder to suspect officers and directors at Google were involved in the wrongdoing. So plaintiffs should have been aware of their claims by then, even if they did not yet have all the evidence to prove them. It is not necessary that a plaintiff find the smoking gun before being charged with inquiry notice. (*Id.* at p. 44 [A plaintiff need not have all the details regarding the alleged harm before the statute begins to run.].)

Plaintiffs point to an inability to compel the corporation to produce documents before filing suit as a reason they were not on inquiry notice in 2010. Citing *La. Mun. Police Employees' Ret. Sys. v. Lennar Corp.* (Del. 2012) 2012 Del. Ch. Lexis 230, p. 8, they argue that settlement of a lawsuit without admitting wrongdoing and media reports regarding possible corporate misconduct are insufficient grounds to support a shareholder demand for inspection of corporate books and records. But the issue is not whether plaintiffs could have compelled the company to submit to a shareholder inspection demand in 2010, as the facts already publicly known at that time put them on inquiry notice. Further, plaintiffs do not identify any specific information they were prevented from learning by not being able to inspect records—to the contrary, they concede that an inspection demand would not have yielded any evidence of the no cold call agreements because there was no information about the agreements in corporate minutes or related records. If there was no evidence to be obtained from a records inspection, the inability of plaintiffs to conduct one has no bearing on whether they had inquiry notice.

Plaintiffs argue that the information related to the Department of Justice enforcement action cannot be viewed in isolation but rather must be viewed in context with everything else that was known at the time. They assert that a reasonable shareholder would not have suspected Google executives were involved with the no cold call agreements—despite the antitrust action alleging just that—because the "total mix" of information made it appear that Google had not engaged in any misconduct. The total mix of information as described by plaintiffs includes the facts that Google's announcement of the settlement with the Department of Justice was crafted to minimize its import; that Google paid no fine nor was it subjected to any other penalty; that Google did not disclose anything about the settlement in its regulatory filings; and that certain news articles described the hiring process at Google as being intensely competitive. Plaintiffs argue one could not reasonably suspect the harm that had been caused to the corporation based on the available information as a whole. But even considering the additional information plaintiffs offer, the fact that the Department of Justice brought an enforcement action alleging that a practice engaged in by Google executives violated federal law would warrant further investigation by a prudent shareholder. (See *Pomeranz v. Museum Partners, L.P.*, *supra*, 2005 Del. Ch. Lexis 10 at p. 39 ["The plaintiffs, as rational investors, should have begun asking questions."].) Plaintiffs cite *Neubauer v. Goldfarb* (2003) 108 Cal.App.4th 47, 64, for the proposition that under Delaware law, whether a reasonable shareholder would consider a piece of information important given its context is a question of fact precluding summary judgment. *Neubauer* is inapposite. In that case, the issue was whether a misrepresentation by a corporate officer was sufficiently material such that the plaintiff could avoid summary judgment on a cause of action for breach of fiduciary duty. There was no statute of limitations issue, so the court did not decide whether the facts were sufficient to place a shareholder on inquiry notice.

Plaintiffs also rely heavily on *In re Tyson Foods, Inc. Consol. S'holder Litig.* (Del. 2007) 919 A.2d 563, 591, in which shareholders were not on inquiry notice "simply

9

because some relevant information was in the public domain." But the nature of the wrong in *Tyson Foods* was far more latent than what plaintiffs allege here. It involved spring loading stock options, meaning granting options to executives just before the announcement of an event that would cause the stock price to increase. Though the information needed to prove that claim—the dates of the option grants and the various public announcements—was readily available, the court declined to find that reasonable diligence requires a plaintiff to sift through records disclosing the option grants, compare them with media reports of the public announcements, and then identify the pattern from which spring loading could be inferred. (*Ibid.*) In that case, even though the underlying information was available, the conclusion giving rise to the claims was not apparent on the face of that information. The situation here is reversed—plaintiffs did not need to piece together any facts to reach the conclusion giving rise to their claims. The wrong that formed the basis of plaintiffs' claims had already been discovered by the Department of Justice; plaintiffs only needed to seek out further supporting evidence.

Plaintiffs urge us to find that the statute of limitations was tolled on the theory that Google concealed facts about the settlement with the Department of Justice and made misleading statements about it. In plaintiffs' view, Google's announcement of the settlement sanitized it to such a degree that it appeared to be a routine event, and the failure to report the settlement in any regulatory filings reinforced that idea.

A limitations period will be tolled while a defendant "engaged in fraudulent concealment of the facts necessary to put a plaintiff on notice of the truth." (*In re Dean Witter Partnership Litigation*, *supra*, 1998 Del. Ch. Lexis 133, at pp. 20–21.) And "[u]nder the theory of equitable tolling, the statute of limitations is tolled for claims of wrongful self-dealing, even in the absence of actual fraudulent concealment, where a plaintiff reasonably relies on the competence and good faith of a fiduciary." (*Weiss v. Swanson* (Del. 2008) 948 A.2d 433, 451.) "But any possible tolling exception to the strict application of the statute of limitations tolls the statute '*only until* the plaintiff

10

discovers (or [by] exercising reasonable diligence should have discovered) [the] injury.' When plaintiffs are on inquiry notice the statute of limitations begins to run." (*Pomeranz v. Museum Partners, L.P.*, *supra*, 2005 Del. Ch. Lexis 10, at p. 11.) "[E]ven where defendant is a fiduciary, a plaintiff is on inquiry notice when the information underlying plaintiff's claim is readily available." (*In re Dean Witter Partnership Litigation*, *supra*, 1998 Del. Ch. Lexis 133, at p. 36.) We have already determined that the information giving rise to plaintiffs' claims was readily available as of the time of the Department of Justice antitrust action in 2010. The theories of fraudulent concealment and equitable tolling therefore do not assist plaintiffs.

Plaintiffs point to a lack of response from the public as evidence that a reasonable shareholder would not have considered the settlement of the antitrust action to be an important event. According to plaintiffs, "the public did not react to the DOJ settlement as material news." Of course, that argument is greatly undermined by the fact that within a year several employee class action lawsuits seeking billions of dollars in damages were filed based on the conduct alleged in the Department of Justice action. Plaintiffs acknowledge the class action suits were premised on the same general facts, but argue that the employee claims in those suits did not require proof the directors of the corporation lacked independence—an element that is required in this shareholder derivative action. Plaintiffs assert that even if the employees had enough facts to be on notice of their wage loss claims against the company, there were no facts at the time to suggest the individual directors were involved in the wrongdoing. Plaintiffs cite several Delaware cases where actions were dismissed for failure to plead specific facts to support an inference of director misconduct. But here, the facts available in 2010 did support an inference of director misconduct. The Department of Justice concluded after an investigation that senior executives at Google reached express no cold call agreements with competitors and actively managed those agreements. The fact that Google does not use the term "senior executives," makes no difference: the description is still sufficient to

11

put a reasonable shareholder on inquiry notice that corporate directors were involved in the conduct.

We acknowledge that certain facts relevant to plaintiffs' claims were unavailable to them until well after September 2010. But the facts that *were* available at that time are sufficient to provide inquiry notice of the claims. The trial court therefore properly granted summary judgment to defendants based on the statute of limitations.[3]

### III.  DISPOSITION

The judgment is affirmed. Respondents shall be awarded costs on appeal.

---

[3] Plaintiffs also argue in their opening brief that the trial court erred in summarily adjudicating their causes of action for indemnification and contribution because those causes of action accrued later than the others. As defendants correctly point out, plaintiffs never raised that argument in the trial court, so it is forfeited. (*Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1519 [" 'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider ... . Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier.' "].) As plaintiffs did not address the forfeiture argument in their reply brief, we assume they abandoned the issue. (*Overstock.com, Inc. v. Goldman Sachs & Co.* (2014) 231 Cal.App.4th 513, 530, fn. 11.)

_____

Grover, J.

**WE CONCUR:**

_____

Elia, Acting P. J.

_____

Premo, J.

**H043220-***The Police Retirement System of St. Louis et al. v. Page et al.*

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-14-CV-261485 |
| Trial Judge: | Hon. Peter H. Kirwin |
| Counsel for Plaintiffs/Appellants: The Police Retirement System of St. Louis, Marilyn Clark and Pradeep Shah | Brian J. Robbins<br>Kevin A. Seely<br>Gina Stassi<br>Michael J. Nicoud<br>ROBBINS ARROYO LLP<br><br>Joseph W. Cotchett<br>Nancy L. Fineman<br>Mark C. Molumphy<br>COTCHETT, PITRE & McCARTHY |
| Counsel for Defendants/Respondents Larry Page, Sergey Brin, Eric E. Schmidt, Robert Alan Eustace, Paul S. Otellini, L. John Doerr, Ann Mather, John L. Hennessy, K. Ram Shriram, Shirley M. Tilghman, Omid Kordestani, Jonathan J. Rosenberg, Shona L. Brown, Michael Moritz, Arthur D. Levinson, Arnnon Geshuri, and Nominal Defendant Goolgle, Inc. | Boris Feldman<br>Elizabeth C. Peterson<br>Cheryl W. Foung<br>Stephen B. Strain<br>WILSON, SONSINI, GOODRICH & ROSATI |