Filed 12/29/23  Chases v. Chases CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BRENEN CHASES,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ALEXANDER BUTLER CHASES III et al.,<br><br>    Defendants and Respondents. | D080930<br><br><br><br>(Super. Ct. No.<br> 37-2019-00049169-CU-FR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

Law Offices of James Swiderski and James Swiderski for Plaintiff and Appellant.

Artiano Shinoff, Steven J. Barnes and Howard A. Kipnis for Defendants and Respondents.

Plaintiff and appellant Brenen Chases appeals from a summary judgment in favor of defendants and respondents Alexander Butler Chases

III and Craig Card on Brenen's[1] operative complaint for, inter alia, fraudulent concealment and financial elder abuse in which Brenen alleged in part that Butler took advantage of and influenced their grandmother Mary Nell Chases Lewis to create estate planning instruments in Butler's favor. The trial court ruled that the statute of limitations barred the action, which was commenced in 2019, approximately seven years after Mary's death in 2012. Specifically, as to fraudulent concealment, the court ruled undisputed facts showed plaintiffs were on inquiry notice in that they suspected Butler was coercing and exerting undue influence on Mary starting in 2000; they suspected Butler was taking advantage of Mary's impaired mental capacity to structure her estate planning in his favor from at least 2008; and that Alex Sr. had a suspicion of wrongdoing by no later than 2012. It ruled the remaining claims were either premised on the same conduct or alleged a conspiracy or aiding and abetting the same wrongdoing, which were barred by the same limitations periods.

On appeal, Brenen concedes that Alex Sr.'s claims were barred by the statute of limitations. He argues Alex Sr.'s knowledge should not be imputed to him, and there is a triable issue of fact as to when he first learned of his rights and obtained standing to sue. Brenen contends the trial court erred by concluding there was no admissible evidence of Mary's testamentary incapacity at the time she entered into the challenged estate plans; rather, there is evidence raising a triable issue of fact as to whether she had the legal capacity to sign off on testamentary gift planning beginning with her

---

[1]     We adopt the parties' designations of the appellant as Brenen and respondent Alexander Butler Chases as Butler, since they share the same surname and also because Butler's first name is the same as their father, plaintiff Alexander Chase, who we will refer to as Alex Sr. Similarly, for clarity we refer to Mary Nell Chases Lewis as Mary.

2

November 1996 will. Brenen further contends this court has discretion to consider new theories—equitable relief and intentional interference with prospective inheritance—based on legal questions determinable from facts that are uncontroverted in the record that could not have been altered by the presentation of additional evidence. Defendants have moved to strike portions of Brenen's reply brief for referring to matters outside the record.

We deny defendants' motion to strike, but disregard extra-record evidence cited in the briefs. On the merits, we conclude the court properly granted summary judgment based on the applicable statutes of limitation. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The undisputed facts are taken from the parties' separate statements of undisputed material facts (Code Civ. Proc., § 437c, subd. (b)) and other facts are set out in the light most favorable to Brenen, drawing all reasonable inferences in his favor. (*California Medical Assn. v. Aetna Health of California Inc.* (2023) 14 Cal.5th 1075, 1103.) This factual recitation recognizes that Brenen does not squarely challenge the trial court's evidentiary rulings on Butler's objections, and on summary judgment, this court disregards the evidence to which the objections were made and sustained. (*Regents of University of California v. Superior Court* (2018) 4

Cal.5th 607, 618; *Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542.)[2]

Mary is Alex Sr.'s mother and the grandmother to Alex Sr.'s sons Brenen and Butler. In 2004, Mary retained an estate planning attorney, Denise Polito, who drafted three wills for her at her direction during 2006, 2007 and 2008. Each of these wills revoked all prior wills and codicils. Alex Sr. had vetted attorney Polito to make sure his mother's affairs were handled correctly.

By 2006, Mary was 86 years old, in frail health, feeble-minded and susceptible to influence. In 2007, she was diagnosed with Alzheimer's dementia, and was forgetting things such as doctor's appointments and hospital visits. In September 2008, Judith Copeland took over as Mary's estate planning attorney. Having observed Butler interact with Mary, Alex Sr. perceived Butler was more concerned about Mary's money than her health, and that Butler's unannounced visits were motivated by his desire to curry favor and manipulate her.

When Mary died in June 2012, she had in place a will and trust that she had amended in October 2008 with Copeland's assistance. Mary's October 2008 will expressly revoked all prior wills and codicils, and left her property to the trustee of her trust to be distributed under its provisions. Neither of Mary's sons nor Butler or his friend, Craig Card, were present at

---

2 For example, the trial court sustained objections to portions of Alex Sr.'s declaration on which plaintiffs relied to contest many of defendants' material facts, particularly paragraph Nos. 2 and 8 of that declaration. It also sustained all of defendants' objections to the declaration of plaintiffs' counsel, which targeted many of the exhibits he attached and referenced as "true and correct copies . . . maintained by [his] office," including Mary's medical records. Defendants did not object to excerpts of Butler's deposition. Nor did they object to Alex Sr.'s declaration concerning Mary's 2007 Alzheimer's diagnosis, so we regard that fact as undisputed.

4

meetings where those instruments were conceived and signed. In July 2012, all of Mary's trust beneficiaries and heirs, including Alex Sr., were served with a Probate Code section 16061.7 notice, informing them among other things that any action to contest Mary's trust would be time-barred if not filed within 120 days of the notification.

Within a few weeks after Mary's death, Alex Sr. retained counsel. His lawyer obtained copies of all of Mary's estate planning instruments and gave them to Alex Sr. Alex Sr. also attempted to obtain all of Mary's medical records to confirm his belief that due to her medical condition she was coerced into making decisions, about which he had spoken with different attorneys as early as 2007. He advised both the trustee of Mary's trust and attorney Polito that Mary's trust had been created and executed after Mary had been diagnosed with dementia, calling into question her capacity to make a new estate plan. Alex Sr. repeatedly requested that the trustee consider Mary's mental capacity when the 2008 trust was created, that Butler had been unduly influencing Mary and had withdrawn funds from her without her knowledge and consent, and that the trustee should look into whether some of Mary's assets were missing. Ultimately, Alex Sr. did not file a trust contest. The trustee obtained court approval of her trust accounting and plan of final distribution, and Alex Sr. signed a stipulation that waived his right to pursue the trustee of Mary's trust for the trustee's work. In September 2015, the court entered a stipulated order of final distribution of Mary's estate.

In December 2018, Alex Sr. discovered a holographic will that Mary had signed and dated in 1993, when she was in good health and of sound mind. The 1993 will was located at a property Alex Sr. had inherited in 2016, in a box labeled with Butler's name and inside Butler's company's corporate books. The 1993 will differed from Mary's 2008 estate plan in that Brenen

5

was to receive a portion of Mary's estate and other accounts of Mary's were not gifted to Butler.

In September 2019, Alex Sr. and Brenen filed a lawsuit against Butler and Card alleging claims for fraudulent concealment of Mary's 1993 will, financial elder abuse, conversion, conspiracy and aiding and abetting. They eventually filed a second amended complaint eliminating the conversion claim. They alleged Butler had a history of lying to obtain advantages over others, including Mary, and that he began taking advantage of Mary's memory problems that started in the mid-2000's. They alleged Mary's 1993 will reflected her true intentions about how to distribute her assets, and that Butler concealed that will so as to influence Mary to create a new estate plan in his favor. Plaintiffs alleged that by mid-2007 Mary was suffering from probable Alzheimer's dementia, and was unable to understand the nature of what she was signing or resist Butler's undue influence. Thus, they alleged, Mary did not have the capacity to create her 2008 estate plan, which was only the result of Butler's influence.

Alex Sr. later testified at his deposition that as early as 2000, he believed that Butler had been coercing Mary to make financial decisions to Butler's benefit, and in 2007 he complained to Mary's attorneys about her being unduly influenced to make such decisions in Butler's favor.

Defendants Butler and Card moved for summary judgment or alternatively summary adjudication of issues. They asserted each of the second amended complaint's claims were time-barred by the applicable statutes of limitation and also by the doctrine of laches; Brenen lacked standing to assert the claims because he was neither Mary's heir, successor-in-interest, nor residuary beneficiary of her trust; Mary's 1993 will was not material because it was revoked many times over and because the assets of

6

the estate passed in accordance with the trust, not pursuant to probate of Mary's will; defendants did not have knowledge or possession of the 1993 will, the concealment of which did not proximately cause plaintiffs damage; and plaintiffs could not establish that Mary's operative estate plan was procured by undue influence. Defendants relied in part on the second amended complaint's allegations that while Alex Sr. did not have a copy of a prior estate plan, Mary had told him her true intentions to leave certain property to him and Brenen consistent with her 1993 will.[3] They also relied on allegations that despite being aware of Mary's intended distributions in 1993 and their beliefs about Butler's wrongdoing, plaintiffs were forced to accept Mary's 2008 distributions because of the estate plan's no contest clause, which was included at Butler's insistence.

As for the fraudulent concealment and financial elder abuse claims, defendants further argued Alex Sr. was estopped from asserting them by his 2015 stipulation to the final disposition of Mary's estate. Defendants supported their motion with their own declarations, as well as those from attorneys Polito and Copeland.

---

[3] Plaintiffs alleged: "Although [Alex Sr.] did not have a copy of any prior estate plan, Mary told him that she intended that [he] would receive real property located at Loring St. in San Diego, [Alex Sr.'s brother] would receive real property located at Seabright Ln. in San Diego, [Alex Sr.] would receive Mary's residence, Brenen . . . would receive property located at Eastgate Mall in San Diego, and the Chases family would collectively share vacation property located in Mexico. Regarding Mary's stock held by Merrill Lynch and Paine Webber, 1/4 would go to Butler, 1/4 would go to [Alex Sr.'s brother], 1/4 would go to [Alex Sr.], and 1/4 would be shared between the remaining grandchildren, including Brenen, who was also supposed to receive Mary's AT&T stock. Other stock certificates were held in a safety deposit box, and [Alex Sr.'s] understanding was that such stocks bad already been assigned to various persons, including [Alex Sr., his brother], and Butler."

In opposition, plaintiffs argued as to the statute of limitations that the delayed discovery rule applied because Alex Sr's suspicion of wrongdoing had no evidentiary basis until he discovered the 1993 will, of which he had no legal possession and could not have known about until December 2018. They maintained the December 2018 discovery commenced the statute of limitations. They further argued Alex Sr.'s signing of the 2015 stipulation did not waive his claims of wrongdoing against Butler, but that it was "a very limited and narrow stipulation" that the accounting of Mary's estate was proper and the proposed distribution conformed to her 2008 estate plan. They pointed out that the stipulation did not contain a Civil Code section 1542 waiver. Plaintiffs argued defendants sought to have the court draw inferences in defendants' favor, when all inferences were to favor their claims on summary judgment. Alex Sr. submitted his own declaration in opposition, attesting to his knowledge and addressing the facts set out in defendants' separate statement. Plaintiffs also submitted a declaration from their attorney attaching exhibits received in discovery and lodged in connection with the summary judgment opposition. They filed extensive objections to defendants' evidence.

In reply, defendants submitted their own objections to plaintiffs' evidence and moved to strike the challenged portions. In part, they again argued the 1993 will was immaterial because plaintiffs had made a binding judicial admission that they did not contest the 2008 trust due to its no contest clause, not because of the earlier will. Defendants also argued that the evidence showed Mary had executed additional estate planning documents revoking all prior wills, and plaintiffs presented no admissible evidence to support a claim that Mary's 1993 intent was still her intent in 2006 to 2008. Defendants argued there were no issues of material fact

8

requiring a trial on any of plaintiffs' other claims; according to them, plaintiffs did not present admissible evidence demonstrating the invalidity of any of Mary's later wills and admitted they did not contest Mary's 2008 trust despite their belief she had set forth her intentions in a prior will; they presented no evidence either defendant had knowledge or possession of the 1993 will; Brenen lacked standing to bring a financial elder abuse claim as he was not a beneficiary of Mary's 2008 trust, which was the operative instrument; and there was no triable issue as to the time-bar of Alex Sr.'s claim for financial elder abuse or estoppel due to Alex Sr. signing the 2015 stipulation.

Following arguments on the matter, the trial court granted the motion, sustaining in part and overruling in part the parties' evidentiary objections. The court ruled all of the causes of action were time-barred: "In this case, the undisputed facts demonstrate that starting in 2000, [p]laintiffs suspected . . . Butler was coercing and exerting undue influence on Mary so that she would make financial decisions benefitting . . . Butler. From at least 2008, [p]laintiffs suspected . . . Butler was taking advantage of Mary's impaired mental capacity in order to structure her estate planning in his favor. Plaintiffs were on inquiry notice: it is undisputed Alex Sr. made repeated inquiries during this period. It is undisputed that Alex Sr. had a suspicion of wrongdoing by no later than 2012, and therefore had an incentive to litigate this issue at that time. . . . The discovery of Mary's 1993 [w]ill in December,

9

2018 does not change or alter the initial suspicions. This action was not initiated until 2019 such that the limitations period has long since tolled."[4]

Plaintiffs filed this appeal from the ensuing judgment.

## DISCUSSION

### I. *Standard of Review*

"Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" (*Regents of University of California v. Superior Court, supra*, 4 Cal.5th at p. 618; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) A triable issue of material fact exists only if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850.)

"A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense. [Citations.] If the defendant does so, the burden then shifts to the plaintiff to produce admissible evidence demonstrating a triable issue of material fact as to the claim or defense. [Citations.] Theories that are not

---

[4] The court's ruling continued as to the financial elder abuse claim: "As discussed above, this limitations period expired prior to the 2019 filing date of this action because plaintiffs had notice and information of circumstances such that they were put on inquiry notice of the alleged wrongdoing. Summary adjudication [of the financial elder abuse cause of action] is granted on this basis and the court does not address defendants' remaining arguments." (Some capitalization omitted.) As for the conspiracy claim, the court ruled "the last overt act in the alleged conspiracy to unduly influence and coerce Mary would have necessarily occurred prior to her death in 2012 [and thus] this limitations period has also expired." (Some capitalization omitted.) It ruled the aiding and abetting claim was subject to the same limitations period as the underlying torts.

supported by evidence will not raise a triable issue." (*Aton Center, Inc. v. United Healthcare Ins. Co.* (2023) 93 Cal.App.5th 1214, 1229.) If the defendant does not present sufficient evidence to meet his or her initial burden, the burden of production never shifts to the plaintiff. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.) In that event, the court must deny summary judgment. (*Ibid.*)

We independently review the record and the court's summary judgment ruling, applying the same legal standard as the trial court. (*Samara v. Matar* (2018) 5 Cal.5th 322, 338; *Rheinhart v. Nissan North America, Inc.* (2023) 92 Cal.App.5th 1016, 1024.) We liberally construe the evidence, resolving doubts in favor of plaintiffs as the opposing parties. (*Aton Center, Inc. v. United Healthcare Ins. Co.*, *supra*, 93 Cal.App.5th at pp. 1229-1230.)

In assessing the propriety of summary judgment, we apply the settled appellate presumption that the judgment is correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684.) "Therefore, ' " '[o]n review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court.' " ' " (*Meridian*, at p. 684.) The appellant must support each factual assertion with citations to the record, and may not refer to matters outside the appellate record. (*Ibid.*) "The reviewing court is not required to develop the parties' arguments or search the record for supporting evidence and may instead treat arguments that are not developed or supported by adequate citations to the record as waived." (*Ibid.*) We limit review to issues adequately raised and briefed. (*Ibid.*)

11

## II. *Defendants' Motion to Strike*

With the above-referenced standards in mind, we address defendants' motion to strike portions of Brenen's reply brief on appeal. Defendants specifically ask us to strike from that brief (1) certain references to Brenen's deposition testimony, which is not in the appellate record; (2) the characterizations of that deposition testimony; and (3) Brenen's assertion that an allegation in the complaint was a typographical error.

Brenen opposes the motion, arguing it mischaracterizes his appellate position, which is based not on his deposition testimony, but on the absence of fair notice that defendants sought to bind him to a judicial admission of knowledge about the 1993 will and its intended distributions based on paragraph No. 57 of the unverified operative complaint. Brenen maintains defendants did not make such an argument below; they only argued he lacked standing to sue, and his reference to the deposition testimony is solely to show he would have had an explanation had he known of defendants' judicial admission argument and that defendants could not have relied on such an alleged admission by foregoing discovery, as they took his deposition on the matter. Brenen argues defendants should be estopped from moving to strike his reference to deposition testimony that Brenen would have proffered had he known of defendants' position. Brenen also argues that defendants' assertions regarding his characterization of his own deposition testimony are themselves dependent on evidence outside the record.

Brenen's standing was not the sole issue raised against him by defendants in their summary judgment motion. They argued the statute of limitations barred the claims of both Brenen and Alex Sr.: "The undisputed facts establish that *plaintiffs* were on notice or suspected that they may have suffered injury as a result of defendant's wrongdoing triggering the

applicable statutes of limitations well prior to the 2015 stipulated order of final distribution." (Italics added; some capitalization omitted.) They also argued "Brenen's right to contest the validity of Mary's trust expired four years following Mary's death." As we point out (part III, *infra*), the motion put Brenen on notice that defendants were relying on the complaint's admissions in asserting the statute of limitations bar to his causes of action.

We deny defendants' request to strike the portions of Brenen's reply brief, notwithstanding Brenen's concession that it contains references to his deposition transcript, which he did not include in the record. When an appellate brief references matters not supported by the record on appeal, we can simply ignore these references rather than strike them. (*Connecticut Indemnity Co. v. Superior Court* (2000) 23 Cal.4th 807, 813, fn. 2.) We will disregard assertions unsupported by record evidence in addressing the propriety of the summary judgment in defendants' favor. This does not prevent us from considering what amounts to a forfeiture argument by Brenen: that defendants did not argue below he should be bound by a judicial admission about his awareness of Mary's intended distributions and belief they were set forth in a prior will.

III.  *Statute of Limitations/Delayed Discovery*

Brenen challenges the trial court's ruling as to the statute of limitations. He concedes it properly determined that Alex Sr.'s claims were time-barred, but argues that the sole evidence on the issue involved Alex Sr.'s knowledge, not his own. According to Brenen, defendants presented no evidence tending to show he (Brenen) was aware of facts so as to put him on inquiry notice of his claim under *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103. Brenen contends he had no standing to assert claims related to Mary's testamentary decisions or financial elder abuse until December 2018, when

13

Alex Sr. discovered the 1993 will granting him property, and there is a triable issue as to his standing and when he first learned of his rights under the 1993 will. Relying on *Kirby v. Albert D. Seeno Construction Co.* (1992) 11 Cal.App.4th 1059, he argues that defendants' reliance on paragraph No. 57 of the operative complaint—which he characterizes as ambiguous—cannot support summary judgment.

Defendants respond that Brenen is bound by the unambiguous judicial admissions made in the operative complaint that at the time of Mary's death he was aware of Mary's intended distributions and the fact she had set them forth in a prior will (second amended complaint, paragraph Nos. 46, 57), and that he and his father had accepted the terms of Mary's 2008 trust despite knowing of Butler's wrongdoing, because that trust contained a no contest clause (second amended complaint, paragraph No. 56). They assert Brenen, who provided no opposing summary judgment declaration, did not dispute the allegations or explain why the court should have disregarded them. According to defendants, the admissions establish Brenen had standing to contest Mary's 2008 trust and also rendered summary judgment appropriate based on the three-year statute of limitations for fraud. They cite authority for the proposition that " 'conclusive concessions' of the truth of material facts made in the pleadings 'may not be contradicted by the party whose pleadings are used against him or her.' "

1. *Legal Principles*

The statute of limitations, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues. (*Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 911; *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191; *Piedmont Capital Management, L.L.C. v. McElfish* (2023) 94 Cal.App.5th 961, 968.) "Traditionally at common law, a

14

'cause of action accrues "when [it] is complete with all of its elements"—those elements being wrongdoing, harm, and causation.' " (*Aryeh*, at p. 1191.) But accrual of a cause of action will be postponed "until the plaintiff discovers, or has reason to discover, the cause of action, until, that is, he at least suspects, or has reason to suspect, a factual basis for its elements." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 389; see also *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 803 ["under the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action"]; see also *Mills v. Forestex Co.* (2003) 108 Cal.App.4th 625, 648 ["the limitations period begins to run when the circumstances are sufficient to raise a suspicion of wrongdoing"].) "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, [he] must decide whether to file suit or sit on [his] rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; [he] cannot wait for the facts to find [him]." (*Jolly v. Eli Lilly & Co., supra*, 44 Cal.3d at p. 1111.) Thus, "[t]he discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action. . . . [P]laintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (*Fox*, at pp. 807-808; accord, *Jolly*, at p. 1114 ["the limitations period begins when the plaintiff suspects, or should suspect, that she has been wronged"].) The "resolution of the statute of limitations issue is normally a question of fact" and is a

15

question of law only "where the uncontradicted facts . . . are susceptible of only one legitimate inference." (*Jolly*, at p. 1112; *Moss v. Duncan* (2019) 36 Cal.App.5th 569, 574.)

When, as here, defendants move for summary judgment based on the statute of limitations, an affirmative defense, "they have the 'burden of persuasion' on that point, meaning they must convince the court that no reasonable trier of fact could find in plaintiffs' favor on the statute of limitations issue. [Citation.] To accomplish that, defendants must first present evidence establishing that plaintiffs' claims are time[-]barred." (*The Police Retirement System of St. Louis v. Page* (2018) 22 Cal.App.5th 336, 340.) A party moving for summary judgment "may rely on the doctrine of judicial admission by utilizing allegations in the opposing party's pleadings to eliminate triable issues of material fact." (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 747; *St. Paul Mercury Ins. Co. v. Frontier Pacific Ins. Co.* (2003) 111 Cal.App.4th 1234, 1248.) " ' "A judicial admission is a party's unequivocal concession of the truth of a matter, and removes the matter as an issue in the case." ' " (*Perez v. Galt Joint Union Elementary School District* (2023) 96 Cal.App.5th 150, 171.) For this purpose, a complaint is a pleading, and when it contains allegations of fact in support of a claim, the opposing party may rely on those factual statements as judicial admissions. (*Myers*, at p. 746; compare *Myers*, at p. 747 [summary judgment motion is not a pleading from which a judicial admission may be taken]; *Betts v. City National Bank* (2007) 156 Cal.App.4th 222, 235 [declining to apply doctrine because the "first proposed [probate] petition was not a *filed* pleading constituting a complaint or an answer in this proceeding"].) As defendants point out, "[f]acts established by pleadings as judicial admissions

16

' "are conclusive concessions of the truth of those matters, are effectively removed as issues from the litigation, and may not be contradicted, by the party whose pleadings are used against him or her." ' " (*Perez*, at p. 171.)

If plaintiffs do not effectively dispute any of the relevant facts raised by the moving defendants, summary judgment is properly granted. (*The Police Retirement System of St. Louis v. Page, supra*, 22 Cal.App.5th at p. 340.) But the motion must be denied if the plaintiffs submit evidence that would allow a "reasonable trier of fact [to] find in plaintiffs' favor on the statute of limitations issue." (*Ibid*.)

2. *Defendants Met Their Initial Burden of Showing Brenen Was on Inquiry Notice of His Claims Relating to Mary's Estate and Brenen Cannot Rebut that Showing*

Here, defendants maintain certain paragraphs of plaintiffs' operative complaint constitute judicial admissions that warranted summary judgment based on the time-bar of the statute of limitations (Code Civ. Proc., § 338, subd. (d)).[5] In their moving summary judgment papers they argued: "Plaintiffs admit to having knowledge and harboring suspicions of a prior will embodying Mary's true intentions at the time of Mary's death in 2012. The

---

[5] The statute of limitations for financial elder abuse is four years. (Welf. & Inst. Code, § 15657.7; *Dennison v. Rosland Capital LLC* (2020) 47 Cal.App.5th 204, 212.) The statute of limitations for fraud and related conspiracy or aiding and abetting is three years. (Code Civ. Proc., § 338, subd. (d); *Filmservice Laboratories, Inc. v. Harvey Bernhard Enterprises, Inc.* (1989) 208 Cal.App.3d 1297, 1309 [timeliness of conspiracy claim "must be determined by reference to the statute of limitations applicable to the underlying cause of action"]; *American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1478 [statute of limitations for a cause of action for aiding and abetting a tort generally is the same as the underlying tort].) Mary died in 2012, and plaintiffs did not file their complaint until December 2019, relying on Alex Sr.'s 2018 discovery of her 1993 will as triggering accrual of their causes of action.

17

only thing plaintiffs subsequently discovered was the actual prior will, which Alex Sr. discovered among documents that had been in his sole possession since at least June 2012. But having formed the belief in the existence of a prior will as early as 2012, plaintiffs certainly were on inquiry notice of its existence, and their failure to search for and locate the will among documents in their sole possession and control since at least 2012 leads to the unmistakable conclusion that plaintiffs could and should have discovered the 1993 will long before 2018 through the exercise of reasonable diligence, and that their claim for fraudulent concealment—not commenced until September 2019—is time-barred."[6] (Some capitalization omitted.) According to

[6] In making this argument, defendants pointed to paragraph No. 56 of the second amended complaint, in which plaintiffs alleged: "Despite [Alex Sr.'s] repeated requests that . . . the trustee[ ] consider Mary's mental capacity when the 2008 trust was created, [the trustee] refused to consider the possibility that Butler had been unduly influencing Mary. Further, [the trustee] refused to look into whether Butler had withdrawn funds and other assets from Mary without her knowledge and consent, or to take such gifts into account when she distributed the trust assets. [The trustee] also refused to look into whether certain assets of Mary's were missing. ln short, [the trustee] failed to adequately prepare an accounting for the trust. Unfortunately, plaintiffs were essentially forced to accept the trust distributions because of the 'no contest' clause, which plaintiffs allege was only included at Butler's insistence in order to prevent plaintiffs or any other beneficiary from attempting to locate the missing assets or questioning Butler's suddenly larger distributions." (Some capitalization omitted.) Defendants also pointed to paragraph No. 57 in which plaintiffs alleged: "Plaintiffs had been aware of Mary's intended distributions, and they believed that Mary set her intentions forth in [a] previous will. [Alex Sr.] advised Mary's attorneys and [the trustee] of this fact; however, the only estate plan which was ever located was the 2008 Trust, which [Alex Sr.] continued to argue had been created through the coercion and undue influence of Butler." Plaintiffs did not dispute the facts based on paragraph No. 56, but purported to dispute the facts contained in paragraph No. 57 based solely on Alex Sr.'s assertion that he "consistently expressed [his]

18

defendants, these " 'uncontradicted facts . . . [were] susceptible of only one legitimate inference,' " warranting summary judgment.

The complaint's factual allegations (footnotes 3 and 6 *ante*), combined with facts that plaintiffs admitted were undisputed, compel us to agree that defendants established that as of Mary's death, Brenen knew of or at least suspected Butler's asserted wrongdoing in influencing Mary to benefit himself at Brenen's expense despite her mental health issues, and that Brenen also either knew or was on inquiry notice of a prior will in which Mary had left certain property and stock to him. Though the complaint alleges that at some point while Mary was alive, she only told Brenen's father about her specific intent to give Brenen property located at Eastgate Mall as well as certain AT&T stock, it further alleges that both "plaintiffs" had been aware of these intended distributions and a prior will setting them out. The complaint alleges that Alex Sr. as early as April 2007 investigated why money had been taken from Mary's account, learned Butler had done so, and under the circumstances, "[p]laintiffs were concerned about [the] 2008 Estate Plan and [an affidavit executed by Mary in 2007 explaining her intent]" in part because "the Eastgate Mall property was now identified as going to Butler and AT&T stock that was to be given to Brenen had seemingly disappeared." In opposing summary judgment Brenen accepted as undisputed defendants' assertion that plaintiffs alleged " '[p]laintiffs were . . . forced to accept' the terms of Mary's Trust *despite their belief of Butler's wrongdoing . . . .*" While that response itself is not a judicial admission (*Myers v. Trendwest Resorts, Inc.*, *supra*, 178 Cal.App.4th at p. 747), Brenen presented no opposing summary judgment declaration of his own, or other

---

distrust of the 2008 Trust and did not believe Mary was in her right mind when she created the 2008 [*sic*]."

19

evidence to dispute his admitted knowledge or belief. But that Brenen failed to submit his own evidence is of no moment in the face of a judicial admission: He " 'cannot offer contrary evidence *unless permitted to amend*, and a judgment may rest in whole or in part upon the admission without proof of the fact.' " (*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1272.)

We reject Brenen's argument in reply suggesting that on this record he learned nothing "to arouse his suspicions" and it remains an issue of fact whether a reasonable investigation could have located the 1993 will, as it was not in his constructive possession or control. For the statute of limitations period to commence under the discovery rule, Brenen was not required to "know the 'specific "facts" necessary to establish' the cause of action . . . but, *within the applicable limitations period*, he must indeed seek to learn the facts necessary to bring the cause of action in the first place—he 'cannot wait for' them 'to find' him and 'sit on' his 'rights'; he 'must go find' them himself if he can and 'file suit' if he does [citation]." (*Norgart v. Upjohn Co.*, *supra*, 21 Cal.4th at p. 398, italics added.) Given his admitted awareness of a prior will of Mary's benefiting him and his belief that Butler had engaged in wrongdoing in connection with Mary's estate, it did not delay accrual that Brenen might not have appreciated the full extent of the damages to him, i.e., all of the details of Mary's 1993 will. (*Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788, 797 ["Must the plaintiff sue even if doing so will require the jury to speculate regarding prospective damages? Or can the plaintiff delay suit until a more accurate assessment of damages becomes possible? Generally, we have answered those questions in favor of prompt litigation, even when the extent of damages remains speculative"].) We cannot disregard the import of the factual allegations demonstrating

20

Brenen's suspicions of Butler's wrongdoing in connection with Mary's property disposition contrary to a prior will in our consideration of summary judgment's propriety.

We additionally reject Brenen's reliance on *Kirby v. Albert D. Seeno Construction Co.*, *supra*, 11 Cal.App.4th 1059 to argue the defendants' argument is a "contortion of an ambiguous statement of the pleadings." Brenen does not discuss *Kirby* in any detail, but the case points out that summary judgment should not be based on tacit or fragmentary concessions contradicted by other credible evidence, mistaken legal conclusions in the complaint, or mistaken answers to discovery. (*Id*. at pp. 1066-1067 ["When the facts submitted in opposition to a summary judgment motion indicate the existence of a material factual issue, summary judgment should not be entered based on mistaken legal conclusions in the complaint. [Citation.] Summary judgment is also inappropriate where the opposing party submits evidence indicating that a mistake was made"].) Plaintiffs' allegations are not legal conclusions, nor did Brenen submit evidence by way of his own declaration or plaintiffs' counsel's that he mistakenly included the allegations concerning Brenen's knowledge of Mary's prior will and Butler's wrongdoing.

Finally, we find unavailing Brenen's attempt to urge that he was not on notice that defendants were holding him to these allegations as judicial admissions, but that defendants had "buried [the argument] among the evidence *exclusively relating to* [*Alex Sr.'s*] *knowledge*" and raised it for the first time on appeal. As quoted above, defendants' summary judgment arguments characterized the allegations as admissions, and their separate statement of material facts pointed specifically to these allegations. This was sufficient to impart notice to Brenen of an argument that he was bound by his complaint's admissions.

21

IV. *Materiality of the 1993 Will*

Brenen points out that the trial court alternatively ruled, consistent with defendants' summary judgment arguments, that the 1993 will or its alleged concealment was irrelevant to his rights and "not a material fact as a matter of law" (italics omitted) as that will was superseded several times over by Mary's new estate planning instruments. He argues the court implicitly ruled there was no factual issue as to Mary's capacity in 2006 and beyond to enter into new wills, but that the undisputed evidence she was diagnosed in 2007 with Alzheimer's dementia,[7] combined with Butler's deposition testimony pertaining to Mary's gift to him of a bank account containing $880,000, creates a triable issue about her competency in entering into the later estate plans, precluding summary judgment.

Because this ruling was alternate to the court's statute of limitations ruling, which disposed of all of the causes of action, we need not address these contentions. Even if the 1993 will was a concealed material fact (that is, that the evidence suggests Mary was suffering from testamentary incapacity at the time she executed her later estate plans), the claims independently remain time-barred by the statute of limitations.

V. *Brenen's Reliance on New Theories*

---

[7] Brenen argues based on *Sweetwater Union High School District v. Gilbane* (2019) 6 Cal.5th 931 that medical record evidence of Mary's Alzheimer's dementia diagnosis—ruled inadmissible by the trial court— would nevertheless be admissible at trial and should be considered on the question. But defendants did not object to Alex Sr.'s statement in his declaration that Mary had been diagnosed with Alzheimer's dementia in 2007, so that diagnosis is undisputed for summary judgment purposes. We need not address the evidentiary legal point based on *Sweetwater Union*.

Brenan finally contends the evidence and the operative complaint[8] support two other cognizable claims: (1) an equitable claim for a constructive trust over the proceeds of the estate distribution made under authority of the 1993 will, which is not dependent on evidence of Butler's wrongdoing and (2) a claim for "interference with prospective inheritance," which assertedly does not require an analysis of whether Butler owed Brenen a duty to reveal the existence of Mary's 1993 will. According to Brenen, the facts of Butler's knowledge of Mary's 1993 will, and evidence of his course of conduct in having him added to her estate plan while she suffered from Alzheimer's dementia, "establish a prima facie case of intentional interference with inheritance."

Apart from *In re Walker's Estate* (1911) 160 Cal. 547, cited as support for his constructive trust claim, and *Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, in which the Court of Appeal recognized the tort of intentional interference with expected inheritance under limited circumstances,[9] Brenen does not explain with case authority how procedurally he should be permitted to raise new claims to defeat summary judgment. Nor does he cite any such authority in reply; he merely argues the new legal theories are supported by the same evidence, and "[n]o prejudice would result to [defendants] from

---

8    Brenen argues as to one of the claims that "the complaint would support [it] on remand." To the extent he points only to the complaint's allegations as support, it is settled that "[a] party cannot avoid summary judgment by relying on 'the allegations . . . of its pleadings.'" (*Aton Center, Inc. v. United Healthcare Ins. Co.*, *supra*, 93 Cal.App.5th at p. 1237.)

9    Under *Beckwith v. Dahl*, *supra*, 205 Cal.App.4th 1039, to maintain such a claim "the defendant's tortious conduct must have induced or caused the testator to take some action that deprives the plaintiff of his expected inheritance" and the plaintiff must have no adequate remedy in probate court. (*Id.* at pp. 1057-1058.)

23

consideration of the new legal theories as an additional basis upon which [his] claims might survive summary judgment."  (Italics omitted.)

Of course, because the pleadings frame the issues on a summary judgment motion, a moving defendant's burden only requires he or she negate theories of liability alleged in the complaint, not on a theoretical possibility outside the pleadings.  (*Ahn v. Stewart Title Guaranty Co.* (2023) 93 Cal.App.5th 168, 182.)  Thus, "a party cannot avoid summary judgment by relying on theories that are not alleged in the pleadings.  [Citation.]  '[A] plaintiff [or cross-complainant] wishing "to rely upon unpleaded theories to defeat summary judgment" must move to amend the complaint before the hearing.' "  (*Champlin/GEI Wind Holdings, LLC v. Avery* (2023) 92 Cal.App.5th 218, 224.)  Brenen has not shown he made any such request.  We reject his effort to avoid summary judgment by asserting two new theories on appeal.

DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


CASTILLO, J.

24